FRANKLIN OVERHEISER, Appellant, *v.* MARY E. LACKEY, Respondent, Impleaded with Others.

**Will — devise of land to testator's daughters "jointly" insufficient to create a joint tenancy.**

1. The rule of the common law that a grant or devise to two or more persons without other words created a joint tenancy was abolished early in the history of this state. The rule which replaced it was embodied in the provision of the Revised Statutes which declared that "Every estate granted or devised to two or more persons, in their own right, shall be a tenancy in common unless expressly declared to be in joint tenancy" (1 R. S. 727, § 44), and has been re-enacted in the existing Real Property Law (Real Prop. Law, § 66; Cons. Laws, ch. 50).

2. In order to create a joint tenancy the terms of the grant or devise must negative the presumption arising from the statute that it is the intention of the testator to create a tenancy in common.

3. Testator made a devise in this language: "Second. I give and devise to my daughters Eliza Jane Marsh and Hester Marsh, jointly, the lot of ground with the dwelling house and improvements thereon situate in the City of New York and known as No. 15 Christopher Street." On examination of this and other clauses of the will, *held*, that in view of the indications that the devise in question was formulated by a layman who did not use the word "jointly" in its distinctively technical sense, it is not a sufficiently express declaration of an intent to create a joint tenancy to negative the presumption established by our statute that a tenancy in common was intended.

*Overheiser* v. *Lackey*, 144 App. Div. 897, reversed.

(Argued December 10, 1912; decided January 7, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 9, 1911, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John W. Weed* for appellant. The will of Hester Marsh devised 15 Christopher street to her two daughters, Eliza Jane Marsh and Hester Marsh, as tenants in common. (*Matter of Albrecht*, 136 N. Y. 91; *Gage* v. *Gage*, 43 Hun, 501; 112 N. Y. 617; *Matter of Cruger*, 81 App. Div. 493; *Matter of Eldredge*, 29 Misc. Rep. 734; *Mustain* v. *Gardner*, 203 Ill. 284; *Garborough* v. *Whitman*, 110 S. W. Rep. 471; 2 Jarman on Wills [6th ed.], 1121; *Doer & Littlewood* v. *Greene*, 4 M. & W. 229; *Case* v. *Owen*, 139 Ind. 22; *Martin* v. *Smith*, 5 Binn. 16.)

*William C. Davis* for respondent. In order to create an estate in joint tenancy it is not necessary to employ the words "in joint tenancy," or the precise language of

the statute.   Any other expression clearly importing such
an intent is sufficient.  (*Purdy* v. *Hoyt,* 92 N. Y. 453;
*Coster* v. *Lorillard,* 14 Wend. 265; *Coudert* v. *Earl,* 45
N. J. Eq. 654; *Case* v. *Owen,* 139 Ind. 22; *Martin* v.
*Smith,* 5 Binn. 16; *Mustain* v. *Gardner,* 203 Ill. 284;
*Garborough* v. *Whitman,* 110 S. W. Rep. 471.)

WILLARD BARTLETT, J.   This is a suit to partition the
premises known as No. 15 Christopher street in the city
of New York.   Whatever title the parties have to the
property in question is derived under the will of Hester
Marsh who died in June, 1884, and whose will was duly
admitted to probate in the Surrogate's Court of the
county of New York on the 7th day of July in that
year.   By this will the premises No. 15 Christopher
street were devised to Eliza Jane Marsh and Hester
Marsh, the daughters of the testatrix.   The daughter
Hester Marsh died on January 6, 1907, and the daughter
Eliza Jane Marsh died on February 27, 1907.   The plain-
tiff claims an interest in the premises as one of the heirs
of the daughter Hester Marsh; but it is conceded that
he has no such interest and cannot maintain this action
if the property was devised by the mother to her two
daughters as joint tenants and not as tenants in com-
mon, for in that event upon the death of the daughter
Hester Marsh the entire estate would have gone to her
surviving sister and there would have been nothing for
the plaintiff to inherit.

The language of the devise which thus gives rise to the
vital question is as follows: "*Second.* I give and devise
to my daughters Eliza Jane Marsh and Hester Marsh,
jointly, the lot of ground with the dwelling house and
improvements thereon situate in the City of New York
and known as No. 15 Christopher Street."

This paragraph is succeeded by several specific lega-
cies, after which comes a residuary clause as follows:
" *Seventh.* I give and devise all of the rest, remainder

and residue of my estate, of whatsoever nature or kind, to said daughters Eliza Jane and Hester, and my son Mortimer, to be equally divided between them."

The ninth and final paragraph in the will ought also to be considered as throwing some light on the correct construction of the second paragraph and indicating the intention of the testatrix as attempted to be expressed therein. This ninth paragraph reads as follows: "*Ninth.* I hereby direct my executors herein named to act as trustees for my daughter Hester, she being deemed of unsound mind, and to receive in trust for her such portion of my estate as may be allotted to her, and I do, by these presents, give to my said executors full power and authority to act for my said daughter Hester, to grant, lien, bargain, sell, if such sale shall be deemed necessary, convey and assure her (Hester's) interest in the real estate herein mentioned to any person or persons and their heirs forever in fee simple by all and every such lawful ways and means in the law as my said executors or their counsel learned in the law shall seem fit or necessary."

The rule of the common law that a grant or devise to two or more persons without other words created a joint tenancy was abolished early in the history of this state, and at the time when the will of Hester Marsh, the mother, took effect the rule which replaced it was embodied in the provision of the Revised Statutes which declared that " Every estate granted or devised to two or more persons, in their own right, shall be a tenancy in common, unless expressly declared to be in joint tenancy." (1 Revised Statutes, 727, § 44.) This provision has been re-enacted in the existing Real Property Law. (Real Property Law, § 66.) Similar legislation abrogating the common-law doctrine favorable to joint tenancy has been enacted generally throughout the Union where " the political policy has been to encourage the distribution of land among the people, to advance which all conveyances to more than one person except to husband

and wife have been construed to be tenants in common unless another estate is fixed by express and definite words of limitation." (*Simons* v. *Bollinger*, 154 Ind. 83.) Joint tenancy, originally a favorite of the common law, is now made an object of disfavor in most of the states by statutes requiring the grantor or devisor who wishes to create a joint tenancy to insert words in his deed or devise clearly showing his intent so to do. (Freeman on Cotenancy and Partition [2d ed.], §§ 18, 35.)

It was held at an early date, however, in this state that the provision of the Revised Statutes which has been quoted did not necessarily require that the words " joint tenancy " should be used in a grant or devise to create an estate of that character provided any other expression clearly importing such an intent was employed (*Coster* v. *Lorillard*, 14 Wend. 342; *Purdy* v. *Hayt*, 92 N. Y. 446), and this is the rule in other states where similar statutes exist. In Illinois, for example, where the act concerning conveyances provides that no joint tenancy in any lands shall be held or claimed under any grant or devise unless the premises therein mentioned shall expressly be thereby declared to pass not in tenancy in common but in joint tenancy, it has been held that a declaration in the express words of the statute is not indispensable. (*Mustain* v. *Gardner*, 203 Ill. 284.) In order to create a joint tenancy, however, the terms of the grant or devise must negative the presumption arising from the statute that it is the intention of the testator to create a tenancy in common.

Where a doubt arises, as in the case at bar, as to the intent of a devisor in using the word " jointly," the courts have sought aid in solving the ambiguity by inquiring whether the instrument of devise was prepared by a lawyer familiar with the technical distinctions between different kinds of estates or by a layman who cannot be presumed to have had any such knowledge. Thus in the case of *Mustain* v. *Gardner* (*supra*) the court remarked

upon the fact that there was nothing in the language of the devise "to indicate that the testator understood the nature and incidents of the different estates or either of them and desired that an estate having the peculiar characteristic of survivorship should pass by the devise." We are not informed by any extraneous evidence as to the authorship or identity of the person who prepared the will which is in question here; but the indications to be found in the instrument itself do not point to authorship by a lawyer. In every specific legacy of money or other personal property the words "give and devise" are used; whereas we could hardly assume that a lawyer would not know that the word "devise" was inappropriate to a gift of personal property. Then in the ninth paragraph there is an attempt to create a trust for the simple purpose of holding the portion of the estate allotted to the daughter Hester, and the trustees are therein given full authority "to grant, lien, bargain, sell," etc., the interest of that daughter. The use of the word *lien* instead of *alien* would hardly have been possible to any one possessing a legal training. It is true there are expressions in the will such as a lawyer might use, as for example, "convey and assure" and "counsel learned in the law;" but these indicate that the document was drawn up by a layman who had in some manner acquired a smattering of the law, rather than by a trained professional hand.

We are, therefore, entitled to assume, I think, that the form of this will and of the devise in question was not dictated or controlled by any discriminating knowledge concerning the difference between joint tenancy and tenancy in common.

In the case of *Mustain* v. *Gardner* (*supra*) the devise under consideration was in the following words: "*Second*. To my beloved daughter, Ola I., and my beloved wife, Sarah A. Mustain, jointly, I give, devise and bequeath lots three (3) and four (4), in block five (5),

in Davis's second addition to the late town (now village) of Blandinsville, to them and to their heirs and assigns forever." It was held by the Supreme Court of Illinois that the word "jointly" in this devise could not be accepted as sufficient to show clearly and explicitly that the testator intended that the estate devised should possess the attribute of survivorship. The court construed it as indicating only an intent to devise the estate to both devisees and it was, therefore, pronounced insufficient to take the devise out of the operation of the statute. Accordingly the estate was declared to be a tenancy in common.

It is to be observed that the devise in the case cited differs from that in the case at bar in its reference to the heirs and assigns of the devisees; but this fact does not seem to have been deemed of any importance by the Supreme Court of Illinois. Another case to the same effect is *Davis* v. *Smith* (4 Harrington, 68), where the devise was to two grandsons of the testator "jointly their heirs and assigns forever." The Delaware statute provides that no estate in joint tenancy can be created unless the property is expressly devised "to be held as joint tenants and not as tenants in common." It was argued that the word "jointly" does not necessarily mean a joint tenancy, inasmuch as tenants in common or coparceners hold the estate jointly until severance; and this view seems to have been adopted by the court which held that the grandsons took the estate not as joint tenants but as tenants in common. Here, also, as in the Illinois case, the devise was to the persons named and their heirs, although no express notice of this fact was taken by the court.

In *Perkins* v. *Baynton* (1 Brown's Chancery, 117) it appeared that one Frances Nott had given by her will "to Stukely Baynton and William Baynton £1,500 jointly and between them." William Baynton survived Stukely and insisted that this was a joint legacy, to the

whole of which he was entitled. The case was heard by Lord Chancellor THURLOW in 1781; and according to the recollection of Lord ELDON as expressed in 1803 in *Crooke* v. *De Vandes* (9 Vesey, 197) Lord THURLOW at first intimated a doubt whether there could be such a thing as a joint tenancy of a money legacy. It appears, however, from the report in Brown that he finally decided that the legacy of the £1,500 to the Bayntons did not create a joint tenancy, and, therefore, that the survivor was not entitled to the whole but took only a moiety. This early case, although dealing with personal property instead of real estate, is favorable to the position of the appellant. Our statute which declares that every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be a joint tenancy applies to personal property as well as real property. (*Mills* v. *Husson,* 140 N. Y. 99, 104.) Mr. James Schouler, in his valuable treatise on the Law of Personal Property, insists that there can be no " estate " in personal property; but however that may be, there is a joint ownership of personal property analogous to a joint estate in lands; and similar rules are applicable to the construction of bequests where the meaning of the testator is doubtful. Speaking of the right of survivorship as constituting a great clog upon property vested in joint owners as distinguished from those who own in common, Mr. Schouler says it seems very unreasonable on the face of it that while both are equally owners the longest liver should have the whole. " And the modern policy of the law strengthened and enforced by numerous local statutes is to regard property which has been given or sold, granted or devised, to two or more persons without words indicating how it shall be held, as a tenancy or ownership in common rather than a joint tenancy or ownership." (1 Schouler on Personal Property [2d ed.], § 156.)

In view of the indications that the devise in question

here was formulated by a layman who did not use the
word "jointly" in its distinctively technical sense, we
conclude that it is not a sufficiently express declaration of
an intent to create a joint tenancy to negative the
presumption established by our statute that a tenancy in
common was intended.    The judgment of the Appellate
Division and the Special Term must, therefore, be reversed
and a new trial granted, with costs to abide the event.

GRAY, J. (dissenting).    I think that the determination
below was correct, by which a devise of realty to the
testatrix's two   daughters was held to create a joint
tenancy and not a tenancy in common.    The language of
the devise is:   " I give and devise to my daughters Eliza
Jane Marsh and Hester Marsh, *jointly*, the lot of land
with the dwelling house and   improvements thereon,
situate," etc.    It is the 2d clause of the will; following
the direction for the payment of debts.    The 3d, 4th,
5th and 6th clauses contain bequests of moneys and
chattels.    In the 7th clause, she gives the residue of her
estate, of whatsoever nature, " to said daughters Eliza
Jane and Hester and my son Mortimer, *to be equally
divided between them.*"   By the 8th clause, she appoints
executors and by the 9th clause she directs them to act
as trustees " for my daughter Hester, *she being deemed
of unsound mind;*" giving them power of sale over
her interests.    It is argued, in substance, that there is a
doubt as to the intention of the testatrix in using the
word " jointly," in her devise of the house and land to her
two daughters, and, regarding the provision in the light
of the statutory rule and of certain indications that the
instrument was the work of the unskilled hand of a lay-
man, that that doubt should be resolved adversely to a
construction, which would give effect to the peculiar word
used by creating a joint tenancy.    The question is, did not
the testatrix, by that particular qualification of her gift,
intend to create an estate, which, being enjoyed jointly,

or concurrently, by the two sisters, would vest in title in the survivor of them? Changing what was the rule at common law, our statutory rule reads: "Every estate granted or devised to two or more persons, in their own right, shall be a tenancy in common, unless expressly declared to be in joint tenancy." (1 R. S. 727, § 44; Real Property Law, § 66.) The construction to be given to this statute is that, in order to create an estate in joint tenancy, "it was not necessary that the words *joint tenancy* should be used and that any other expression, clearly imputing such an intent, would be sufficient." (*Coster* v. *Lorillard*, 14 Wend. 265; *Purdy* v. *Hayt*, 92 N. Y. 446, 453.) Do we not find, in addition to the peculiar use of the word "jointly," in other parts of this will, something to point to an intention to give a qualified estate? Certainly, if we discover that intention to qualify her devise, it must govern. To the rule of intention, if lawful, all other rules of construction yield. That the testatrix did mean to give an estate of survivorship, or a joint tenancy, I think, appears pretty plainly, by referring to other provisions and to so construe the clause in question will better effectuate her testamentary plan. In the first place, there is significance in the fact that the devise is of the "dwelling house;" that is to say, the family residence. It was in testatrix's mind that that should be enjoyed by her daughters while they lived. There was no necessity to give it to them "jointly," unless, by the use of that word, it was intended to exclude the idea that the title should be several and distinct in each, as by tenancy in common. Not only is there no expression indicating an intention that the estate might be divided, but when we read a few lines below, in the 7th clause, we find an appreciation of the distinction in the kind of title conferred. The gift of the residuary estate is to the same daughters and their brother, "*to be equally divided between them.*" If giving "jointly" meant nothing more than "together," or "unitedly," as

contended for, then why change the language when giving the remainder of her estate to her three children? Then, in the next place, some reason is apparent, which may have influenced the testatrix's mind in devising the dwelling house to her daughters in joint tenancy. In the 9th clause she speaks of Hester as being of unsound mind, and, therefore, undertakes, however ineffectively, to confide her interests to the care of trustees. Her understanding of her unfortunate daughter's mental condition must have led her to believe that Hester would not marry (she did die unmarried); that by giving the dwelling house in joint tenancy the family home would be preserved for her while she lived, and that, in the event that she should survive her sister and become sole owner of the fee, upon her death, Eliza's children would get their share of the inheritance.

Each case, in the construction of wills, must be governed by its peculiar facts. In the present one, I am strongly of the opinion that the devise of the property to the daughters *jointly* was language of survivorship and created an estate in joint tenancy, when it is read in connection with the entire will, and that to hold otherwise will be to disregard and to negative the testamentary intent. The Illinois case of *Mustain* v. *Gardner* (203 Ill. 284), upon which stress is laid as an authority, is distinguishable. There the words of the gift of lands were "to my beloved daughter Ola I., and my beloved wife Sarah A. Mustain jointly * * * to them, *their heirs and assigns forever.*" In holding that the statutory presumption of a tenancy in common was not negatived by the use of the word "jointly," the decision of the court cannot be criticised. The addition of the words "their heirs and assigns" gave a sense, or meaning, to "jointly" at variance with the notion of an estate of survivorship having been intended. Unless we are to hold that to create an estate in joint tenancy a testator must use those precise words, then, I think we should say

in this case that the testamentary intent was, by using the word "jointly," to distinguish the possession under the devise from that of a several ownership. As we have seen, any expression in a will importing the intention to create a joint tenancy would suffice. (*Purdy* v. *Hayt, supra.*)

I think the judgment should be affirmed.

CULLEN, Ch. J., WERNER, HISCOCK and COLLIN, JJ., concur with WILLARD BARTLETT, J.; CHASE, J., concurs with GRAY, J.

Judgment reversed, etc.