HART *v*. HART.

WILLS—JOINT BEQUESTS—JOINT TENANCY IN PERSONAL PROPERTY
—SURVIVORSHIP.

> On appeal from the decree of the court below, finding joint
> tenancy with right of survivorship in a fund provided for
> in testator's will, bequeathing to a son and a daughter
> mentally afflicted "jointly the sum of $5,500, provided that
> said sum of $5,500 shall be paid by my executors to my
> son, * * * to be used or invested by him for the care
> and support of his said sister, * * * and for their joint
> use and benefit," where the son died before testator and
> left a daughter, *held*, by a divided court, that the decree
> should provide for the appointment of a trustee to ad-
> minister the fund; the income, and, if necessary, the prin-
> cipal, to be devoted to the maintenance of testator's daugh-
> ter; the final disposition of the residue of the fund not
> being determined.

Appeal from Eaton; Smith, J. Submitted October
15, 1917. (Docket No. 121.) Decided April 25, 1918.

Bill by Albert L. Hart, executor of the will of Oscar
Hart, deceased, against Belle D. Hart and Myra Hart
Abram for a construction of said will. From the de-
cree rendered, defendant Abram appeals. Reversed,
and decree entered.

*William M. Smith*, for defendant Abram.

*George G. Hunter*, for defendant Hart.

FELLOWS, J. Counsel in this case should be com-
mended. In a record of 16 pages the issues are con-
cisely presented and the briefs and oral arguments
have been most helpful to the court.

The will of Oscar Hart, deceased, executed December 11, 1909 (omitting formal parts), is as follows:

"After the payment of my funeral expenses, expense of last sickness, if any, and any lawful debts which I may have contracted, I give, grant and bequeath to my daughter, Alma Estella Taggert, the sum of one thousand ($1,000).

"To my grandchildren, Laura Taggert, Herbert Taggert and Lester Taggert, I give, grant and bequeath to each the sum of one thousand dollars ($1,000).

"To my son, Albert L. Hart, I give, grant and bequeath the sum of three thousand dollars ($3,000), and to my granddaughter, Myrtle Hart, I give the sum of one thousand dollars ($1,000).

"To my son, Harry Hart, I give, grant and bequeath the sum of one thousand dollars ($1,000); and to my granddaughter, Lula Hart, I give a like sum of one thousand dollars ($1,000).

"To my son, Rosco Hart, I give, grant and bequeath the sum of three thousand dollars ($3,000).

"To my son, Arthur C. Hart, I give, grant and bequeath the sum of one thousand dollars ($1,000).

"To my daughter, Belle D. Hart and to my son, Almon E. Hart, I give, grant and bequeath to them jointly the sum of five thousand five hundred dollars ($5,500.00), provided that said sum of five thousand five hundred dollars ($5,500.00) shall be paid by my executors to my son, Almon E. Hart to be used or invested by him for the care and support of his said sister, Belle D. Hart, and for their joint use and benefit.

"To my daughter, Irene Dunning, I give, grant and bequeath the sum of one thousand dollars ($1,000).

"To my son, Karl S. Hart, I give, grant and bequeath the sum of one thousand dollars ($1,000), and to my granddaughter, Kathryn Hart, I give a like sum of one thousand dollars ($1,000).

"To my beloved wife, Electra Hart, I give, grant and bequeath the sum of two thousand five hundred dollars ($2,500).

"I hereby nominate my sons, Almon E. Hart and Albert L. Hart, as executors of this my last will and testament, thereby giving and granting unto my said sons as executors full power and authority to grant,

sell and convey by deed or otherwise any and all real estate of which I may die seized or possessed, hereby intending that they will convert the same into money as rapidly as is consistent with good business judgment for the purpose of distribution according to the tenor of this document."

This controversy involves the construction of the clause referring to the daughter Belle D. and the son Almon E. Belle D. suffers from a mental affliction. Almon E. predeceased his father ten days, leaving a daughter Myra Hart Abram, his sole issue. The trial court held that Belle D. took the full sum of $5,500 by right of survivorship. Myra Hart Abram appeals, claiming that the right of survivorship does not apply and that she, as sole issue of Almon E., takes one-half of said bequest of $5,500 under the provisions of section 13793, 3 Comp. Laws 1915; section 11001, 4 How. Stat. (2d Ed.).

Two questions therefore arise on this record:

(1) Does joint tenancy in personal property, with its right of survivorship exist in this State so that by operation of law the survivor takes the whole?

(2) Does this will, properly construed, evidence an intent on the part of the testator to give the entire sum to the survivor?

1. In the consideration of this branch of the case it should be constantly borne in mind that we are not dealing with a grant or devise of real estate, nor with a bequest to a class, nor a bequest of heirlooms whose value consists of their associations, nor with a deposit with a bank or trust company. The property involved is cash, and the question presented whether the right of survivorship attaches as matter of law to a joint bequest to two or more persons.

It is insisted by appellee that joint tenancy in personal property, with its incident of survivorship, existed at common law, and that in the absence of stat-

utory enactment it must be deemed to exist in this
State. That joint tenancies are of feudal origin, and
were at one time highly favored in England, does not
admit of doubt; but long ago they grew in disfavor
there as is evidenced by the following language of
Lord Chancellor Thurlow, in *Campbell* v. *Campbell*,
4 Br. C. C. 14 (decided in 1785):

"However the court might formerly lean to the con-
struction of wills, so as to create joint tenancy, it has
now for many years found the inconvenience of that
construction, and has laid hold of any words in a will
that will favor the construction of tenancy in com-
mon."

The same learned chancellor, in *Perkins* v. *Baynton*
(decided in 1781), 1 Br. C. C. 118, declined to recog-
nize the right of survivorship where the will made a
bequest of 1,500 pounds to two parties "jointly and
between them," remarking:

"The intent here was to give each an usable interest,
as it is a sum of money which resolves between them."

While as early as 1747 Lord Hardwicke, in the case
of *Haws* v. *Haws*, 1 Ves. 13, said:

"It is true that joint tenancies are not favored here;
as introducing inconvenient estates, and making no
provision for families, and now courts of law also lean
against them, although it was formerly said by C. J.
Holt that they were favored, which was on a technical
reason, because the law was averse to multiplication of
tenures and services, which being now reduced to
socage, and no burthen, the construction is the same
in all courts."

It is said in 7 R. C. L., at page 813:

"The estate in joint tenancy presents some of the
most artificial rules of subtle distinctions of the an-
cient common law. It was once highly favored in
England, doubtless for reasons that were feudal in
their character and influential in their day, but which
have long since ceased to operate. Whatever may have

been the causes which led to the origin of this estate, or which recommended it to our ancestors of the feudal period, it is undeniable that at this day it has grown into disfavor in England and America."

We are, however, most concerned in the former holdings of this court. If the question has been settled for this jurisdiction we should follow such holdings. In the early case of *Cote* v. *Dequindre*, Walk. Ch. 64, the question of the right of the surviving owner of a mortgage to foreclose arose. The court sustained such right but recognized the equitable interest of the personal representatives in nearly all cases in the money when collected from the debtor of two or more persons part of whom were deceased. In the case of *Martin* v. *McReynolds*, 6 Mich. 70, the question again arose. It was there held that, due to the exception of mortgages in the statute (being now section 11563, 3 Comp. Laws 1915), the survivor was the proper party to a foreclosure suit, and *Cote* v. *Dequindre* was cited to that effect. In the case of *Teller* v. *Wetherell*, 9 Mich. 464, it was held that after the death of one of two parties, a suit upon a cause of action which survives must be brought in the name of the survivor. But the court in that case was dealing with a partnership. Each of these three cases involves the right to sue on joint obligations and does not involve the rights of the parties *inter sese*. However, the question did arise between the parties in *Wait* v. *Bovee*, 35 Mich. 425. In this case securities were held in the joint name of the husband and wife. The husband predeceased the wife and the case arose between their estates. It was said by this court, speaking through Mr. Justice GRAVES:

"As the case stood, the question was upon the bare legal effect of the husband's death in the lifetime of the wife upon the right to the securities taken by them jointly. Our own decisions relative to the rights of husband and wife in case of united holdings of real

estate, afford no argument here. They were grounded upon the statutory preservation of the common-law doctrine, and which originated in and was developed by a policy not pertinent to cases of taking and holding of personal securities. * * *

"The drift of policy and opinion, as shown by legislation and judicial decisions, is strongly adverse to the doctrine of taking by mere right of survivorship, except in a few special cases, and it should not be applied except where the law in its favor is clear."

In the case of *Luttermoser* v. *Zeuner*, 110 Mich. 186, the question again arose. The property involved was a mortgage, then and now (but not in earlier days) considered personal property. The mortgage ran jointly to Carl Frederick Zeuner, the defendant, and Johanna Rebecca Zeuner. They were husband and wife. The action was brought by Mrs. Zeuner's executor against the surviving husband for one-half of the proceeds of the mortgage which had been collected by him. It was held that he was entitled to recover. This court, speaking through Chief Justice LONG, saying:

"The executor of the estate of Johanna Rebecca Zeuner was not made a party to the chancery proceeding, but defendant contends that at her death the title to the mortgage passed to him as survivor. Counsel is in error in this contention. During the life of Mrs. Zeuner, one-half of the mortgage was her sole property. It is claimed that the mortgage as drawn expressly declared a title in the husband and wife in joint tenancy; that each held an undivided one-half interest therein. At the death of Mrs. Zeuner, the title to her one-half was vested in the executor of her estate for the benefit of any creditors and her heirs at law. *Wait* v. *Bovee*, 35 Mich. 425; *In re Albrecht*, 136 N. Y. 91. This being so, and the executor not having been made a party defendant in the chancery suit, the court below was not in error in directing verdict and judgment in favor of the plaintiff."

In the case of *Burns* v. *Burns*, 132 Mich. 441, a

bank deposit was involved. The deposit was originally in the name of Michael Burns, who instructed the teller to put his wife's name opposite his name so that she would have the right to draw from the account, remarking "that it was as much her money as it was his money." Shortly before Michael's death the wife withdrew the money. The action was one brought by his administrator to recover the full sum. This court failed to find a gift *inter vivos* and held that plaintiff was entitled to recover, saying:

"We are also of the opinion that there was no proof from which a gift *inter vivos* can be inferred. The testimony does not indicate that the testator ever deprived himself of authority over the fund, and, while the testimony of Schmiel, Dempsey, and the bank teller tends to show an intention to allow her to use the fund, such authority was terminated by testator's death. The case of *Brown* v. *Brown,* 23 Barb. (N. Y.) 565, is in point."

In the case of *State Bank of Croswell* v. *Johnson,* 151 Mich. 538, this court found, as matter of fact, that a gift had been established, the transaction partaking of both a gift *inter vivos* and a gift *causa mortis.* The certificate of deposit had been endorsed with an order to issue a new certificate payable to "Thomas Parker and Alice Parker or the survivor of them." But this court there expressly recognized that under our decisions the right of survivorship does not obtain in personal property held in joint ownership, saying:

"Our decisions that the law of survivorship does not apply in the case of joint ownership of personal property does not affect the right of a donor to make a gift to his surviving wife."

Much reliance is placed by appellee's counsel on the case of *Mann* v. *Hyde,* 71 Mich. 278, and it is thought by counsel that the holdings in that case as to the library, and the residuary clause are controlling here.

As to the library, the question does not appear to have been a litigated one, one "seriously disputed," and no discussion of legal principles is found in the opinion on that subject. As to the residuary clause, the case is not as applicable to the question being considered under this head as the one we shall next discuss, but upon either question we think the case is clearly distinguishable from the instant case. Here the bequest involved is a specific one, there the clause involved was the residuary clause of the will. The residue of the estate was divided into seven parts. As to one of these sevenths a provision was made for disposition in case of the death of the legatee, but no such provision was made as to the other six-sevenths, a fact thought significant by this court. It was also thought by the court that, the one-seventh having been given to Mr. and Mrs. Hyde and their son, showed an intent that the Hyde family should take this seventh, and, Mrs. Hyde being deceased, the surviving members of the family took what this court was impressed the testator intended to give the Hyde family. But, as we have already stated, the clause construed was the residuary clause and any other construction than that given would have resulted in a lapsed legacy and partial intestacy. Partial intestacy is not favored; all intendment is required to be made to prevent such result. *Toms* v. *Williams*, 41 Mich. 552, 562; *Foster* v. *Stevens*, 146 Mich. 131; *Des Grand Champ* v. *Duflo*, 169 Mich. 104. The case cannot be regarded as authority on the branch of the case under consideration, or as casting doubt on the case of *Wait* v. *Bovee, supra*. It is authority to be considered upon the other branch of the case, but for the reasons stated we do not regard it as controlling.

From an examination of the authorities we conclude that it is the fixed and settled law of this jurisdiction that the right of survivorship does not attach, as mat-

ter of law, to personal property held in joint owner-
ship, nor that bequests to two or more persons by
operation of law pass to the survivor; in other words,
joint tenancy, in personal property, with its right of
survivorship, does not obtain in this jurisdiction. The
authorities from other jurisdictions are in hopeless
conflict. We will not discuss them. The rule has been
established in this State. It is a rule of property.
We have no inclination to change it.

2. The purpose of construction of wills is to ascer-
tain the intent of the testator. If the intent is clearly
expressed, the will is not open to construction—there
is nothing to construe; if ambiguous, rules of construc-
tion must be applied. That Oscar Hart might, if he
desired, give the sum here involved to his son and
daughter, or to the survivor of them, is beyond con-
troversy. The task for our undertaking is to deter-
mine whether such was his intent. The language used
is ambiguous, the task one of difficulty. That the
rules used to aid in the construction of the language
of wills cannot be arbitrary and unbending is appa-
rent from the fact that the language used differs in
different wills, and seldom, if ever, are two wills in
all respects alike. Substance rather than form must
be considered, and a rule that will aid in one case
may be of little assistance in another. In no case
may technical rules of construction be persuasive
against the intent fairly ascertainable from the in-
strument itself.

One of the rules to assist in the construction of
ambiguous clauses of a will is that the law favors
that construction which will make a distribution as
nearly comformable to the general rule of inheritance
as the language will permit. *Rivenett* v. *Bourquin,*
53 Mich. 10; *In re Lamb's Estate,* 122 Mich. 239;
*Murdoch* v. *Bilderback,* 125 Mich. 45; *Long's Estate,*
228 Pa. 594; *Kilgore* v. *Kilgore,* 127 Ind. 276. In the

case of *Rivenett* v. *Bourquin, supra,* the testatrix gave her property to her four children by name, "in equal proportions to each, share and share alike," and then added the following clause: "and in the event of either of my said sons or daughters dying before my death, then and in that case my said estate shall be divided among the survivors, or their legal representatives, share and share alike." This court laid hold of the expression, "legal representatives," and giving force to that expression and the rule that the law favors that construction making a distribution as nearly conformable to the general rule of inheritance as the language will permit, held that the property passed to the issue of the deceased children under the statute passed to prevent the lapsing of devises and legacies, being the one here invoked. Had this court in that case laid hold of the expression "my said estate shall be divided among the survivors" and disregarded the expression "legal representatives" and the rule to which attention has been called, the result would have been a joint tenancy with survivorship, an estate not favored in the law.

In the case of *Kilgore* v. *Kilgore, supra,* the court recognizes the rule that:

"The law favors a distribution of estates under the rule giving to the child or children of a deceased such share as his parent would have taken if living."

The court theretofore having well said:

"The paramount object to be reached in the construction of a will by a court is to so construe it as to express the true intention and meaning of the testator. In many instances it is very difficult to accomplish this object to a degree approaching absolute certainty. Language is often used upon which there can very plausibly be placed different constructions, hence a court must adopt such construction as, under the rules of law governing the construction of wills, seems to it most reasonable."

Another rule brought into play in the construction of wills of doubtful meaning is that if two constructions of a will are permissible, one consistent and the other inconsistent with the law, the presumption that the testator intended to comply with the law will compel the adoption of that construction which is consistent with the law. *Foster* v. *Stevens,* 146 Mich. 131; *Hull* v. *Osborn,* 151 Mich. 8. While this rule is most frequently invoked where a construction inconsistent with the law will render the will, or some parts of it, invalid, still may it not also apply where two constructions are equally permissible, one creating an estate favored in the law and one creating an estate disfavored in the law?

This will bears evidence upon its face of having been drawn by one with legal experience. This is a fact which we may consider in its construction. *Over-heiser* v. *Lackey,* 207 N. Y. 229. May we assume, under such circumstances, that it was intended by the language used to create an estate which does not arise, as matter of law, in this State? Had the terms "joint" or "jointly" been used in a bill of sale it would not have created an estate in joint tenancy with right of survivorship. Had the terms been used in any instrument dealing with personal property, other than a will, it would not be seriously contended that under our decisions an estate in joint tenancy, with its incident of survivorship, had been created. May we then assume that in this instrument the testator by the use of these terms intended to create an estate favored in feudal times, but now in disfavor, both in England and in this country? The following language of Justice Spear, in *Webster* v. *Insurance Co.,* 53 Ohio St. 558, answers the inquiry:

"Should the word 'jointly' receive construction in accordance with strict legal ideas? If so, does it mean that the plaintiffs were joint tenants as defined by

Blackstone, giving right of survivorship? An Ohio lawyer, even, would hardly have that in mind, for joint tenancy does not exist in Ohio."

So we say here joint tenancy in personal property does not exist in this State, and we ought not to assume that the testator intended and the scrivener by the language used, designed to create such an estate. We are not now dealing with real estate and therefore do not determine whether the language used would be sufficient under section 11562, 3 Comp. Laws 1915. What we are dealing with is personal property which is not governed by the section cited. The following cases may be considered upon the effect to be given the terms "joint" and "jointly." *Langmaid* v. *Hurd*, 64 N. H. 526; *Overheiser* v. *Lackey, supra; Mustain* v. *Gardner*, 203 Ill. 284; *Haven* v. *Haven*, 181 Mass. 573; *Gorman* v. *Gorman*, 87 Md. 338; *Webster* v. *Insurance Co., supra; In re Albrecht, supra.* In the case of *Langmaid* v. *Hurd, supra,* it was said by the court:

"The bequest 'unto Frank Hurd and family, jointly,' is not a clear expression of an intention to create a joint tenancy. The testator seems to use the word 'jointly' in its ordinary sense, to signify such a collective body as 'joint heirs,' who are 'deemed tenants in common.' "

We have carefully considered the cases cited by appellee. Those from this court are distinguishable from the case at bar, and, as we have said, those from other jurisdictions are in hopeless conflict. To consider all the cases cited, or examined by us, would make this opinion unnecessarily prolix, without benefit to the parties or the profession.

Another difficulty encountered in construing this clause of the will, one not urged by counsel, grows out of the words "use and benefit," found in this clause. If this will contained a residuary clause our former

decisions tend to the construction that these words imported a life estate, but there is no residuary clause in this will. Each of the bequests is for a specific sum of money. It is clear that testator thought and intended to dispose of his entire estate and made no provision for any residue. Taking this fact and applying the rule heretofore adverted to, that partial intestacy is not favored and that all intendment is required to prevent such result, we conclude that it was not the intent of the testator to create a life estate, leaving a residuary estate undisposed of.

Taking the will in its entirety, and we must consider it from its four corners, we find that each grandchild, save only the defendant Myra Hart Abram, was given a thousand dollars; each daughter, save the unfortunate one, was given a thousand dollars, and she was given more; three sons were each given a thousand dollars; two sons were given three thousand dollars each. All of these bequests were absolute. There is nothing to indicate that he did not desire his son Almon to have an absolute bequest, no evidence of ill feeling against him. Indeed, on the contrary, he made Almon one of the executors of his will and trustee for the amount given his unfortunate daughter Belle. He directed the payment of the entire $5,500 to Almon; but it was to be for the use of both. Taking the instrument itself, applying to it the rules of construction which we are bound to apply in case of ambiguity, we conclude that the $5,500 bequest to Almon E. and Belle D. was not intended by the testator to be held by them as joint tenants with the right of survivorship. but that they were made tenants in common of this fund and each entitled to an equal share.

Almon E. having predeceased the testator, it follows that under the provisions of section 13793, 3 Comp. Laws 1915, his issue Myra Hart Abram takes the estate given by the will to her father. *Rivenett v. Bourquin, supra; Strong v. Smith,* 84 Mich. 567.

The decree of the court below should be reversed and one here entered in accordance with this opinion. Defendant Myra Hart Abram should recover her taxed cost to be paid by the estate.

MOORE, J., concurred with FELLOWS, J.

BIRD, J.

"To my daughter, Belle D. Hart and to my son, Almon E. Hart, I give, grant and bequeath to them jointly the sum of five thousand five hundred dollars ($5,500.00), provided that said sum of five thousand five hundred dollars ($5,500.00) shall be paid by my executors to my son, Almon E. Hart to be used or invested by him for the care and support of his said sister, Belle D. Hart, and for their joint use and benefit."

It is said that the foregoing bequest cannot be construed as a joint bequest because the common-law doctrine that a conveyance of personal property to two or more persons creates a joint interest has never been adopted in this State. While it is true that this doctrine has never prevailed in this State (*Wait* v. *Bovee*, 35 Mich. 425), and that such a conveyance will be construed in this State to be an interest in common rather than a joint interest, this construction is indulged in only where there is nothing beyond the naming of two or more beneficiaries to indicate the kind or quality of interest intended to be conveyed, or where the question is doubtful as to whether an interest in common or a joint interest was intended. To this effect are the cases cited by Mr. Justice FELLOWS.

There are no statutory provisions against creating a joint interest with the incident of survivorship in personal property in this State, and there has never been any refusal upon the part of the courts to enforce such an interest when the testator made it clear that it was his intention to create it. In the paragraph in question the testator has made it clear in language easily understood that he intended to create a joint be-

quest. "I bequeath to them jointly,  *  *  *  for their joint use." This language leaves no doubt as to his intention, and it appears to me that his reasons for desiring it lie upon the surface. The daughter Belle was afflicted with a mental malady, and he wanted to leave her in the care of his executor—his trusted son—believing he would care for her, and that the income from the bequest would aid him in so doing. When Belle was gone Almon would take the entire fund, as survivor, as a reward for his services. If perchance Belle should outlive him the fund would be none too large to care for her in other hands. It is quite evident that one-half of the income from $5,500 would be a rather meager sum to support a girl whose mind was so ajar that she could not take care of herself.

It is further stated that if this construction prevails it will deprive the appellant, Almon's daughter, of any participation in her grandfather's estate; that the testator gave his other grandchildren $1,000 each, and no reason appears why he should have excepted the daughter of his trusted son. One answer to this argument is, the testator did not by the terms of his will give her anything. May it not be probable that his failure to give her anything was due to the fact that he had given her something during his lifetime? Or may he not have thought that Almon would in the end get the entire sum, and that sum would be large enough to suffice for both? But whatever may have been his reason for not doing the same by her as he did by the other grandchildren, I do not understand it to be the province of this court to guess what he wanted to do, or what he ought to have done for this granddaughter, and then enforce that guess at the expense of directly overruling his express instruction with reference to the joint fund and its joint use. Had testator given them the fund and directed that Almon should keep it invested for their joint use and in case

of the death of either the residue should go to the survivor, this court, without hesitation, would have enforced it. What was directed to be done was the equivalent of this in the law if we give to the words "to them jointly" and "for their joint use" their legal meaning.

The parental, solicitous love of testator for this unfortunate daughter prompted him to make extra provision for her protection and care after he was gone, and it seems improbable that he intended her income should be reduced by half in the event that she survived Almon who had been chosen to care for her. I am of the opinion that the chancellor properly construed the provision.

The decree should be affirmed.

KUHN, J., concurred with BIRD, J.

OSTRANDER, C. J. It is clear, I think, that the testator desired, and, by the language employed, intended, to provide a fund of $5,500, in the hands of Almon, to be by him used and invested primarily for the care and support of Belle. The testator's use of the word "jointly" and the term "their joint use and benefit" may be referred, not to the particular estate intended to be created, but to the desire that one or other, or both, of those children should have all of the fund and its accumulations. He did not leave $2,750 to Belle and $2,750 to Almon, nor $5,500 to either of them. He did not limit the amount to be used for Belle to the income derived from the fund. He assumed that the income and principal might be used jointly, that is, in common, by both of them; which is only saying that the common use of it might operate to care for and support Belle. Both of them might be warmed by the same fire, replenished out of the fund. There is evident no idea that Belle will have children to take in her place, while it is evident that Almon might

have issue. This from the situation of each. It turns out that Almon does not, while Belle does, survive the testator. Almon cannot act as trustee of the fund created for their joint—common—benefit. This fact furnishes no reason for dividing the fund as if the testator had given $2,750 to each child. It may still be invested and the income and, if necessary, the principal, used for the care and support of Belle. Other heirs are excluded from participation at any time in the fund. These two use it, and all of it. Upon the decease of Belle, the children or representatives of Almon will take whatever sum remains. This, I think, is what the testator intended, and there appears to be no legal objection to carrying out the intention. As nearly as may be, a trustee may carry out the intention of the father, paying over any residue to the heirs of Almon.

STEERE, BROOKE, and STONE, JJ., concurred with OSTRANDER, C. J.

Two justices only voting for affirmance of the decree, it is reversed. A majority of the Justices are of opinion that the use of the income from the fund of $5,500, and, if necessary, the principal thereof, shall be devoted to the maintenance of Belle D. Hart during her life: It is so ordered, and the decree will provide for the appointment of a trustee by the court below to administer the fund accordingly. The disposition of the residue of the fund, upon and after the decease of Belle D. Hart, is not determined.