In the Matter of the Estate of THOMAS SNELL, Deceased.

Surrogate's Court, New York County, December 13, 1939.

*Kaye, Scholer, Fierman & Hays,* for the Manufacturers Trust Company, as sole surviving executor.

*Callaghan, Stout & Nova,* for Frederick B. Merkle and others, as executors, etc., of J. Willis Amey, deceased.

*Harold E. Lippincott,* for Ethel Snell Amey.

*Parsons, Closson & McIlvaine* [*Ellwood Thomas* and *Albert S. Wright* of counsel], for the Cooper Union for the Advancement of Science and Art, respondent.

*Maurice Dolphin,* for Harold E. Lippincott, individually.

*Cravath, deGersdorff, Swaine & Wood,* for Katherine Snell McGovern.

*Daniel J. Mooney,* for the Lawyers Trust Company, general guardian of J. Willis Amey, Jr.

*Harold E. Blodgett,* for the Union National Bank of Schenectady. general guardian of Frank Lowell Amey.

*John G. Dyer,* special guardian.

FOLEY, S. The remaining issues in this contested accounting proceeding, which also involves the construction of the will as modified by the agreement of settlement approved by the decree of probate, are disposed of as follows:

(1) A question arises as to the construction of paragraph fifth of the will. It reads: " To my beloved niece, Ethel Snell Amey, and to her husband, my friend, Dr. J. W. Amey, I will and bequeath the sum of two hundred thousand dollars ($200,000) jointly, to in part recompense them for their kindness and attention to me during the latter years of my life." That paragraph was not affected or modified by the agreement of settlement. One of the legatees Dr. J. Willis Amey, died on January 19, 1939. Dispute has arisen between the legal representatives of his estate and the surviving legatee, his wife, Ethel Snell Amey, as to the meaning and effect of the terms of the will. Counsel for Mrs. Amey contends that the

legacy was joint in its nature with a right of survivorship in her to take the entire legacy of $200,000 at the death of her husband, Dr. Amey. On the other hand, counsel for the estate of Dr. Amey assert that the legacy was several in character and that each of the legatees took one-half of the total amount given as a tenant in common.

The surrogate holds that no right of survivorship was intended by the testator and that the fund passed in equal parts to each of the legatees named. (Real Prop. Law, § 66; *Overheiser* v. *Lackey*, 207 N. Y. 229; *Matter of Haddock*, 170 App. Div. 26; *Matter of Richards*, 150 Misc. 102, 108; *Matter of Baker*, 146 id. 296, 299.) The conclusion reached by me could well be based alone upon the authority of *Overheiser* v. *Lackey* (*supra*), which is squarely in point. The language of the will and the inferences from the facts surrounding its draftsmanship and execution are almost identical. In that case the will read: " I give and devise to my daughters * * * jointly, the lot of ground with the dwelling house." In the will here involved the gift was to Mr. Snell's niece and to her husband " jointly." In the *Overheiser* case (*supra*) the court said that they had not been informed by any extraneous evidence as to the authorship or identity of the draftsman of the will. " But the indications to be found in the instrument itself do not point to authorship by a lawyer." In the pending proceeding no lawyer has come forward to admit the paternity of the preparation of the paper and no attorney has been discovered who drew it or supervised its execution. On the other hand, there is a clear inference that it was drafted by the testator himself in collaboration with other laymen. It is drawn upon a printed stationer's form of a will. The improbability of an attorney using such a form is apparent.

In the *Overheiser* case the effect upon the will of section 66 of the Real Property Law was considered. That section provides: " Every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy." It has been repeatedly held that the section applies with equal force to personal property. (*Overheiser* v. *Lackey, supra; Mills* v. *Husson*, 140 N. Y. 99, 104, and the cases therein cited.) In the *Overheiser* case the court, in its inferences from the inartificial manner of draftsmanship by a person who possessed a " smattering of the law, rather than by a trained professional hand," said, in its interpretation of the use of the word " jointly," " We are, therefore, entitled to assume, I think, that the form of this will and of the devise in question was not dictated or controlled by any discriminating knowledge concerning the difference between joint tenancy and tenancy in common." A drafts-

man unfamiliar with the technical definition of a joint tenancy with survivorship or a tenancy in common could not be presumed to have had accurate knowledge of the true differentials between these forms of gifts, bequests or titles. The purposes of a testator should never be obstructed by the use in the will of inapposite words employed without understanding of their recognized technical meaning. (*Matter of Winburn*, 265 N. Y. 366, 375.) The misapplication of legal terms will not defeat an intention manifested with reasonable clarity. (*Bliven* v. *Seymour*, 88 N. Y. 469, 476.) The gift and devise in the *Overheiser* case (*supra*), despite the presence of the word " jointly," was held to result in a tenancy in common. In this conclusion the Court of Appeals held specifically that the use of the word " jointly " was not a sufficiently expressed declaration of an intent to create a joint tenancy " to negative the presumption established by our statute that a tenancy in common was intended." Similarly in the present proceeding if survivorship had been intended it should have been expressed in the will. Its omission furnishes strong evidence that a division in title between the beneficiaries was intended. (*Purdy* v. *Hayt*, 92 N. Y. 446, 452, 453.)

The authorities relied upon by counsel for Mrs. Amey relating to tenancies in real estate by the entirety or to the taxation of true joint estates in personalty with survivorship or to the common-law form of joint tenancies of personalty created by the husband but by no other person, with survivorship as between husband and wife, have no application to the situation in the pending proceeding.

The practical construction placed upon the will by Dr. Amey and Mrs. Amey and their attorneys also sustains the conclusion of the surrogate as to the several and divisible character of the legacy.

A probate contest arose over the will of Mr. Snell. It was adjusted by formal agreement of the parties which was ratified and confirmed by the decree of probate. In addition a separate personal agreement, dated April 11, 1935, was executed between the two legatees and Mr. Gano Dunn, acting on behalf of Cooper Union, whereby the legatees assigned certain substantial amounts out of the legacy given to each of them. Both legatees were represented by experienced attorneys. Mrs. Amey's counsel was Mr. Henry Wynans Jessup, who was skilled in the law of estates. Moreover, there is a receipt in evidence signed by her for a payment on account of her legacy. These formal documents of the parties constitute strong admissions, particularly against Mrs. Amey, which destroy her present contentions and support her own recognition over a period of eight years that she took as a tenant in common.

In the absence of imposition the practical construction placed upcn the terms of a will by the parties over a long period of time is of extreme importance and may be regarded as an estoppel against a subsequent change of position. (*Matter of Seidenberg*, N. Y. L. J. Nov. 14, 1934, p. 1791; *Matter of Katz*, 155 Misc. 623; *Matter of Hennessy*, Id. 53, 59; *Matter of Parker*, 118 id. 121; affd., 204 App. Div. 876; affd., 236 N. Y. 583; *Thorn* v. *De Breteuil*, 179 id. 64.) Division and distribution in moieties are, therefore, decreed.

(2) In respect of subdivision four of paragraph sixth of the original agreement of settlement, dated April 15, 1932, relating to paragraphs ninth to thirteenth, inclusive, of the will which was embodied in the decree of probate dated May 25, 1932, the surrogate holds that annual contributions to the extent of $2,500 each must be made from the time of the death of Dr. Amey, one of the life tenants, from the income of each of the trusts provided in subdivisions one and three. By that direction Mrs. Amey, as life tenant, is obligated to pay $2,500 out of the income of her trust and the children of Dr. Amey, as life tenants, are required to pay the further sum of $2,500 out of the income of their trust from the date of death of Dr. Amey until the total sum of $45,000 due Cooper Union, as required by the agreement, is satisfied.

(3) In respect of paragraph seventh of the agreement of settlement in the probate proceeding, as confirmed by the decree of probate, the surrogate holds that neither the original will nor the agreement of settlement contemplated the absolute payment of $5,000 to each of the four life tenants, Katherine McGovern, Jean McGovern, J. Willis Amey, Jr., and Frank Lowell Amey. Although the word " annuity " was used in the will, consideration must be given to the fact, as stated above in the use of the word " jointly," that it was drafted by a layman unfamiliar with the technical definition of legal terms. The use of the word " annuity " must yield, therefore, to the paramount expression of intent that the fixed amounts were directed to be paid out of income only when and if earned upon the various trusts. (*Matter of Clark*, 251 N. Y. 458; *Matter of MacDonald*, N. Y. L. J. June 16, 1934, p. 2936; affd., 247 App. Div. 882; leave to appeal denied, 272 N. Y. 677; *Matter of Hirshon*, 251 App. Div. 546; *Matter of Smathers*, 133 Misc. 812; *Matter of Vanderbilt*, 134 id. 574; affd., 229 App. Div. 574; *Matter of Rounds*, 252 id. 10.) Nor does the so-called guaranty agreement of Cooper Union admit of a construction which compelled that institution to pay the annual amount of $5,000 to each of the beneficiaries. Under the terms of the agreement it was only required to repay during the period of the trust out of the income received by it from the specific trust, the deficiency between the

amount of earned income and the sum of $5,000 when such deficiency actually occurred. The executors will, therefore, be required to keep a continued and cumulative account of such deficiencies of income due the life tenants. If and when surplus income upon the fixed annual amounts would, in the ordinary course, become payable to Cooper Union, the executors must pay such surplus income to the respective life tenant and not to Cooper Union, and such surplus income shall be allowed as a credit against the accumulated deficiency fund appearing upon their books.

(4) The stipulation of the parties adjusting the fixation of the attorneys' fees and other items and authorizing the filing of the amended schedules to the account has been approved by the surrogate.

(5) Commissions upon the promissory note of $30,000 made by Dr. Amey, one of the executors, are disallowed. The note was canceled as an indebtedness by the testator by the express terms of his will. Cancellation became effective as of the date of death of the testator. No actual receiving of the asset by the executors ever took place and no basis for the award to them of commissions upon the note under the provisions of section 285 of the Surrogate's Court Act ever existed. Commissions will be allowed to the estate of the deceased executor in accordance with the amended schedules.

Tax costs. Submit decree on notice construing the will and settling the account in accordance with this decision and the previous rulings of the surrogate upon the other issues.

No present direction for the sale or mortgage of the estate assets will be made because of the existing conditions and the unmarketability of the properties.

The decree may contain an appropriate provision deferring the disposition of such assets for a period of six months. It may also include a reservation for further directions at the foot of the decree at the expiration of that period upon notice of motion or order to show cause to all of the parties interested.