(97 Misc. Rep. 223)

## In re CATLIN et al.

(Surrogate's Court, New York County.   October 14, 1916.)

1. TRUSTS ⊚⟹21(2)—CREATION—REQUISITES—DESIGNATION OF FIDUCIARY.
   While the naming of a fiduciary is not essential to the creation of a trust, a valid trust cannot be created unless there is something to indicate that the testator contemplated one of the class of active trusts permitted by the statutes relating to trusts or powers.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 30;  Dec. Dig. ⊚⟹21(2).]

2. WILLS ⊚⟹688—CONSTRUCTION—TRUST OR ABSOLUTE GIFT.
   A devise to an infant goddaughter of the sum of $10,000 in trust, without in any way limiting the nature of the contemplated trust or mentioning any trustee, passed an absolute bequest of that amount, to be paid over to her general guardian.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1644–1649;  Dec. Dig. ⊚⟹688.]

3. TRUSTS ⊚⟹21(2)—REQUISITES—BENEFICIARY.
   To constitute a trust not charitable in nature there must always be a definite person entitled to enforce the trust in equity, which person must be ascertained or ascertainable from the language employed.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 30;  Dec. Dig. ⊚⟹21(2).]

4. TRUSTS ⊚⟹127—REQUISITES—PURPOSE.
   The trust purpose of a noncharitable donation must be clearly worked out by the settlor, or a court of equity cannot enforce it.
   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 170;  Dec. Dig. ⊚⟹127.]

5. WILLS ⊚⟹680—CONSTRUCTION—TRUST.
   Where a testatrix resorted to the technical phrase "trust," technical construction follows as of course, in the absence of all clear intent to the contrary.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1594–1598;  Dec. Dig. ⊚⟹680.]

6. WILLS ⊚⟹590—CONSTRUCTION—INTENTION OF TESTATOR.
   The quantum of a freehold estate devised by will is to be determined primarily by the intention of the testator as deduced from his language contained in the devise.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1293–1297;  Dec. Dig. ⊚⟹590.]

7. WILLS ⊚⟹590—CONSTRUCTION—NECESSITY.
   Rules of construction are primarily and ultimately only aids for construing ascertained intentions.   The intention, irrespective of results, must be ascertained before proceeding to construction, and recourse to construction should ordinarily be had only where there is some obscurity in the language and meaning of a will, and not until interpretation ends.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1293–1297;  Dec. Dig. ⊚⟹590.]

8. WILLS ⊚⟹440—CONSTRUCTION—INTENTION—PRESUMPTION.
   When a testator's intention is not plainly contrary to the language of the will, the law presumes the intention to coincide with the language of the will.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. § 956;  Dec. Dig. ⊚⟹440.]

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. WILLS ⊜⇒456—CONSTRUCTION.

A will drawn by a layman is to be construed much as a layman would construe it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. ⊜⇒456.]

10. WILLS ⊜⇒597(4)—CONSTRUCTION—LANGUAGE—HEIRS.

The technical use of the term "heirs" is not necessary at common law to carry a fee to a devise.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1323; Dec. Dig. ⊜⇒597(4).]

11. WILLS ⊜⇒597(1)—CONSTRUCTION—FEE SIMPLE—"ESTATE."

The word "estate," used simpliciter in a devise, implies now, as formerly, a fee-simple or freehold estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1319, 1322, 1326; Dec. Dig. ⊜⇒597(1).

For other definitions, see Words and Phrases, First and Second Series, Estate.]

12. WILLS ⊜⇒601(1)—CONSTRUCTION—QUANTUM OF ESTATE—FEE SIMPLE.

Under a will devising the real and the remaining personal estate to a nephew, and, in the event of his marriage or death at any time, over in trust to a goddaughter and to her sister, the nephew first took an estate in fee simple absolute, not cut down by the subsequent language.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340, 1341; Dec. Dig. ⊜⇒601(1).]

13. WILLS ⊜⇒647—DEVISES—VALIDITY—RESTRAINT OF MARRIAGE.

A devise, directing that, in the event of a devisee's marriage, the estate devised to him should go over to somebody else, would be a general restraint of marriage, and void against public policy.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1533–1538; Dec. Dig. ⊜⇒647.]

14. WILLS ⊜⇒487(3)—CONSTRUCTION—SUBSEQUENT DECLARATIONS OF TESTATOR.

Declarations of a testatrix made subsequent to the execution of her will are not competent evidence to aid construction, where there is no latent or patent ambiguity justifying their acceptance in evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1027; Dec. Dig. ⊜⇒487(3).]

In the matter of the judicial settlement of the account and proceedings of Lynde Catlin and another, as executors of Cora V. R. Catlin, deceased. Account, as amended by stipulation filed in proceeding, approved, and decree to be settled in conformity with opinion.

Townsend Jones, of New York City, for Lynde Catlin.

Henry Gansevoort Sanford, of New York City, for executors.

John M. Shedd, of New York City (John M. Shedd, of New York City, of counsel), for infant's general guardians.

Taylor, Jackson, Brophy & Nash, of New York City, for New York Graduate Medical School and Hospital.

Stewart & Shearer, of New York City, for New York Public Library, Astor, Lenox and Tilden Foundations.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

FOWLER, S. In this proceeding to settle judicially the accounts of executors, it is necessary for the purpose of distribution to construe the following paragraphs of the will of testatrix:

"To my goddaughter, Helen Neilson Edmonds, I give $10,000 in trust. * * * My real estate and any remaining personal estate I leave to my nephew, Lynde Catlin. In the event of his marriage or death at any time I give it in trust to my goddaughter, Helen Neilson Edmonds, and to her sister. Catherine Livingston Reade Edmonds."

An earlier proceeding for construction was dismissed (89 Misc. Rep. 93, 151 N. Y. Supp. 254), but without prejudice to this proceeding, where construction is necessary, proper, and jurisdictional.

It appears by stipulation and otherwise that testatrix, a spinster, when about 68 years of age prepared her own will. Her only next of kin and heir at law was her nephew, Lynde Catlin, mentioned in the will. Helen Neilson Edmonds, referred to in the will, was a cousin and goddaughter of testatrix and about five years of age when the will was executed. Catherine Livingston Reade Edmonds was a sister of Helen Neilson Edmonds, and she died September 30, 1908, or before testatrix. Letters testamentary were issued to Lynde Catlin and Henry G. Sandford August 18, 1914, shortly after the death of testatrix. The will contains numerous general legacies to various societies and charities and to friends of the testatrix. One of the legacies is the sum of $10,000 given to the "Christian Helpers Home of Brooklyn, N. Y.," in memory of Catherine L. R. Catlin, a sister of the deceased. The Christian Helpers Home has no existence, corporate or otherwise, now, nor did it have at the time of the death of the testatrix.

In aid of construction certain declarations of testatrix were offered in evidence over objections to which I shall hereafter allude, as the validity of such objections was reserved and is submitted to me for decision by the terms of the stipulation, which is a part of the record herein. Helen Neilson Edmonds appears by her general guardian, who has filed objections to certain items paid for taxes as set forth in Schedule C-1. But as the main controversy in this proceeding relates to the construction of the will and not to such objections their consideration will be deferred until I proceed to construction.

The opposing contentions concerning construction are substantially as follows: Lynde Catlin urges that the entire residuary estate belongs to him in fee and without qualification. He is not concerned in the pecuniary bequest of $10,000. Helen Neilson Edmonds urges that the estate or interest given to Lynde Catlin amounts to a life interest only, and that it is subject to defeasance upon his marriage, and that the entire remainder interest in the residuary estate, real and personal, including the share which her sister would have taken had she survived the testatrix, passes to her. It is also urged in her behalf that the bequest of $10,000, though stated to be "in trust," is without restriction and an absolute bequest of the legal interest. The executors are indifferent to the contentions, but desire to have their duties made clear.

[1-5] The intention of the testatrix in stating that she gave $10,000 to Helen Neilson Edmonds in trust is questioned by counsel. Certainly if testatrix intended to create a valid trust, permitted by our statutes,

she did not employ the proper means. The nature of the contemplated trust itself is not limited by the will and no trustee is mentioned. While it is true that the naming of a fiduciary is not essential to the creation of a trust, a valid trust cannot be created unless there is something to indicate that the testatrix contemplated one of the class of active trusts permitted by our statutes relating to trust or powers. To read such an intention into the will demands an unwarranted interpolation. Probably the only limitations which the testatrix intended to impose were those associated with any gift to an infant. She probably believed that the infant's guardian would hold this money in trust during the infancy of Helen Neilson Edmonds. The will, I conclude, must be construed to pass an absolute bequest of $10,000 to Helen Neilson Edmonds, which the decree may provide should be paid over to her general guardian. I am led to the conclusion that no statutory trust or power in trust was created by several familiar principles, not alluded to by counsel probably because so familiar. The principle is that, to constitute a trust not charitable in nature, there must always be a definite person, entitled to enforce the trust or power in trust in equity, and this beneficiary must be ascertained or ascertainable in this instance from the language of the limitation itself. So the trust purpose of a noncharitable donation must be clearly worked out by the settlor, or else a court of equity cannot enforce it. When a layman drafting her own will employs the technical term "trust," its construction is subject to no enlargement because the draftsman and settlor is a layman. When testatrix resorted to the technical phrase "trust," technical construction follows as of course in the absence of all clear intent to the contrary. I am confirmed in this because at common law, when property was given to one as trustee, no beneficiary being ascertained and no trust purpose defined, the so-called trustee took absolutely if the estate were a fee and if a life estate he took for his own life.

[6] I will next proceed to the quantum of Mr. Lynde Catlin's freehold estate. This is to be determined primarily by the intention of testatrix as deduced from her language contained in the devise to him.

If proof that testatrix unaided drafted her own will were necessary other than that contained in the stipulation, it is found in the clause last referred to above. The residuary clause also proves it even more emphatically and presents a marked instance of a difficulty occasioned by the attempt of the testatrix to draft her own will. A person more familiar with legal formulas or the law of estates would not have drafted the limitations of estates or interests as she did. Some care would have been observed, certainly, in pointing out the duration of the estate which Lynde Catlin was to enjoy. The various parties in presenting their contentions seem to rely upon well settled rules of construction.

[7] But in approaching a question of the intention of testatrix's will it does not strike me as orderly to assort the various rules of construction and first to pick one which fits the aims of the clients. Rules of construction are primarily and ultimately only aids for construing ascertained intentions. Robinson v. Martin, 200 N. Y. 159, 93 N. E. 488. We must first ascertain the intention of the testatrix,

irrespective of results, and then proceed to construction by the application of settled rules construing the effect of an ascertained intention. Recourse to rules of construction ordinarily should be had only when there is some obscurity in the language and meaning of a will. As I had occasion to hold, construction begins when interpretation ends. In re Kathan's Will, 141 N. Y. Supp. 705. The converse method is illogical. Rules of construction bearing on estates should not be invoked in the first instance to ascertain intention. An intention not clearly expressed is not to be tested by rules of construction bearing on the quantum of estates. Cammann v. Bailey, 210 N. Y. 19, 103 N. E. 824; Fulton Trust Co. v. Phillips, 218 N. Y. 573, at page 583, 113 N. E. 558. Otherwise in nearly every instance difficulty would be created rather than elucidated. Having in mind that it is the paramount intention of the testatrix which is to be first sought, in so far as the same can be gathered from the text of the will, before calling in aid rules of construction, it does not seem plain to me that Cora V. R. Catlin, the testatrix, intended that her nephew should only have an estate during his life, subject to an earlier termination in the event of his marriage, and that the remainder should go to the two Edmonds children. It is apparent from the will itself only that testatrix meant to give Mr. Lynde Catlin some freehold estate.

[8] When a testator's intention is not plainly contrary to the language of the will, the law presumes the intention to coincide with the language of the will. This being so, we may proceed to determine the quantum of the estate given to Mr. Catlin by the language actually employed in the will by this testatrix herself.

[9] It is, no doubt, the rule that a will drawn by a layman is to be construed much as a layman would construe it. Overheiser v. Lackey, 207 N. Y. 229, 100 N. E. 738, Ann. Cas. 1914C, 229; Mee v. Gordon, 187 N. Y. 400, 80 N. E. 353, 116 Am. St. Rep. 613, 10 Ann. Cas. 172. But I think that I correctly stated the proper boundary of this principle when I said that, whenever a testatrix resorts to technical phrase, she is bound by the technical meaning of that phrase in the absence of an express and clear intention to the contrary Now, no such intention to the contrary is here apparent. This being so, what is the construction of the language employed by testatrix which, as I said, must be presumed to coincide with her intention?

[10, 11] One of the most familiar old rules of the law of real property is that technical use of the term "heirs" is not necessary at common law to carry a fee to a devisee, but it is otherwise to carry a fee by a deed. This rule still applies to devises by the express terms of the Revised Statutes. But the rule would apply here without any legislation to that end. The word "estate" used simpliciter in a devise always implies, now as formerly, a fee simple or freehold estate. It is unnecessary to cite authorities for such a familiar principle.

[12] With this conclusion as a premise we may resort to the language of the will of testatrix: "My real estate and any remaining personal estate I leave to my nephew, Lynde Catlin." Had testatrix

stopped there, no one could question that Lynde Catlin took the estate of testatrix, or a freehold estate of inheritance in fee simple absolute. But testatrix did not stop there. She seems to have proceeded to qualify her donation by an additional distinct sentence, or, in other words, it is claimed that she resorted to the process known in law as "cutting down." Certainly the meaning of the modification so made by testatrix is not so clear as could be wished. Consequently, even in the case of a layman, we are driven to the application of the ordinary rule of law settling the quantum of an ambiguous limitation of this character. The rule I refer to is in substance that the quantum of estates, once given absolutely by the terms of a devise, will not be cut down by ambiguous or doubtful language following the absolute donation or gift. Benson v. Corbin, 145 N. Y. 351, 359, 40 N. E. 11. There are a hundred other familiar adjudications to the same effect. Applying this rule, my conclusion is that Lynde Catlin first takes by the devise in question an estate in fee simple absolute, and that it is not "cut down" by the subsequent doubtful language employed by testatrix.

[13] Such a construction, I may add, is supported when we look at the first of the events upon which it is claimed Lynde Catlin was to be divested of the interest he first took; I refer to his marriage. It is claimed that the will directs in substance that in the event of his marriage it is to go over to somebody else. This would be a general restraint of marriage and void against public policy. Hogan v. Curtin, 88 N. Y. 162, 42 Am. Rep. 244; Robinson v. Martin, 200 N. Y. 159, 93 N. E. 488; Matter of Seaman, 218 N. Y. 77, 112 N. E. 576. Such a provision is valid only when it is in partial restraint of marriage or the remarriage of widows or widowers. A limitation of an estate absolutely to a person, conditioned upon his never marrying, is absolutely void, and the estate vests notwithstanding the condition, as it is an unlawful condition subsequent. The next condition referring to the event of devisee's death means his death before that of testatrix in the absence of a plain direction to the contrary. Thus, when we come to analyze the clauses alleged to "cut down" the fee, they prove not to cut it down in any true sense of the term.

[14] In reaching the foregoing conclusions no attention has been paid to the affidavit of Miss Marie L. Deen, setting forth certain declarations of the testatrix. The stipulation already referred to, under which the testimony of Mr. Sanford was given in the form of a deposition, provides also that the affidavit of Miss Marie L. Deen, the companion of the testatrix, may be offered with the same force and effect as if she were testifying. Objection, however, has been taken and reserved to her testimony on the ground of its incompetency. The affidavit of Miss Deen sets forth certain declarations of the testatrix made after she executed the will. The competency of these declarations is challenged. It seems that Miss Deen, the affiant, was a companion of the testatrix for twelve years prior to the latter's death, and she claims to have been told by Miss Catlin that, as the sister of the latter had died, a will, which she had previously made in favor of such sister, had been superseded by a new will which she

had drawn herself. Miss Catlin, indeed, is said many times to have told Miss Deen that Lynde Catlin was her heir, and that he would get all the estate she would leave after certain charitable bequests, and that he should get between $60,000 and $70,000 from the sale of the real estate. The earlier statement said to have been made to deponent was made about six months after the will was executed. The testatrix, it is said, long after the execution of the will also told Lynde Catlin, in the presence of Miss Deen, that he would some day have the balusters of her house. Testatrix enjoined Miss Deen not to let Lynde Catlin sell the mahogany doors with the house, and stated to her that she was afraid she had not left him enough, but that she had left everything to him. Thus it is apparent that the entire contents of the questioned affidavit consists of declarations of the testatrix made after the execution of her will. Such declarations are not competent to sustain the construction in support of which they are offered. The objection made to the use of the affidavit as evidence will therefore be sustained. There is no latent or patent ambiguity justifying the acceptance in evidence of posterior declarations of testatrix. Reynolds v. Robinson, 82 N. Y. 103, 106, 37 Am. Rep. 555; Wigmore on Evidence, §§ 2471 and 2472; In re Fowle's Will, 95 Misc. Rep. 48, 158 N. Y. Supp. 456.

The objection filed by the general guardian to the payment of personal taxes out of the principal is the only remaining question submitted. As an abstract proposition this objection has the support of reason and authority. There is nothing in the will to indicate that the general rule which compels an executor or trustee to pay annual taxes out of income should not be observed if possible in this case. Spencer v. Spencer, 169 App. Div. 54, 154 N. Y. Supp. 527. But in view of the accorded construction this particular conclusion, however, becomes immaterial here.

In all respects the account, as amended by the stipulation filed herein, will be approved. A decree may be settled on notice in conformity with the above opinion. If any further direction is desired by the parties, leave is given to any party to apply on notice or on the settlement of the decree. Proceed accordingly.