In the Matter of the Estate of CHESTER BARRETT, Deceased.

Surrogate's Court, Jefferson County, September 28, 1931.

*Brayton A. Field,* for the executor.

*Thomas Burns,* for decedent's only heir at law and next of kin.

GRANT, S. Decedent died in September, 1929, leaving him surviving as his only heir at law and next of kin his sister, Emma J.

Odell. He left a will which was thereafter admitted to probate. In the 1st paragraph thereof he gave and bequeathed the sum of fifty dollars to the Barnes Corners Cemetery Association. In the 2d paragraph he gave, bequeathed and devised an undivided one-half of the rest, residue and remainder of his estate, both real and personal, of every name and nature, to Jesse R. Grant and Gertrude Grant, his wife, of Barnes Corners, " share and share alike and their heirs forever." The 3d paragraph was as follows:

" *Third.* I hereby give, devise and bequeath the remaining one-half part of my estate, both real and personal, of every name and nature, to Lillian M. Cook of Black River aforesaid, the wife of William Cook, and her heirs forever."

The said Lillian M. Cook predeceased the testator, having died in July, 1928. She was the daughter-in-law of testator's deceased wife. She left her surviving as her only heir at law and next of kin her daughter, Bertha Johnson. At the time of testator's death he owned personal property, but no real property. The will here in question was drawn by an able and experienced lawyer.

The construction of the 3d paragraph of the will is sought. Emma J. Odell contends that the words " and her heirs forever," used in said paragraph, are words of limitation; that by reason of Lillian M. Cook's death prior to that of the testator the legacy and devise lapsed, and that the one-half of the residuary estate mentioned in said 3d paragraph passes to her, Emma J. Odell, as testator's only heir at law and next of kin. The executor contends that the said words " and her heirs forever " are words of substitution; that the legacy did not lapse, and that the property, the disposition of which is provided for therein, passes under the will to the next of kin of Lillian M. Cook.

The answer to the question here presented lies in the intent of the testator. That intent must be determined by what was apparently or presumably in the testator's mind when he made the will. (*Matter of Hoffman,* 201 N. Y. 247, 255; *McLean* v. *Freeman,* 70 id. 81; *Morris* v. *Sickly,* 133 id. 456, 459, 460.) In endeavoring to ascertain what was apparently or presumably in his mind at that time we must look first to the context of the will, to the language which the testator used (*Matter of Buechner,* 226 N. Y. 440, 444; *Salter* v. *Drowne,* 205 id. 204, 212; *Matter of Keogh,* 126 App. Div. 285, 287; affd., 193 N. Y. 602; *New York Trust Company* v. *Thomas,* 142 App. Div. 689, 691), as the law presumes that the language used expresses the testator's intent. (*Matter of Catlin,* 97 Misc. 223, 229.) In examining that language we must take into consideration the fact that it was drawn by an experienced lawyer and must give to the words used their usual and accepted meanings

without enlargement and without restriction (*Overheiser* v. *Lackey*, 207 N. Y. 229, 233; *Adams* v. *Massey*, 184 id. 62, 70), and when particular or technical terms are used particular or technical interpretation or construction follows as of course in the absence of all clear intent to the contrary. (*Matter of Catlin*, 97 Misc. 223, 227.) We must also keep in mind that no words used by the testator should be cast aside as meaningless, but that effect must be given if possible to every word and provision. (*Roseboom* v. *Roseboom*, 81 N. Y. 356; *Matter of Briggs*, 180 App. Div. 752; *Matter of Hemstreet*, 101 Misc. 340; *Kent* v. *Fisk*, 151 App. Div. 279.) We must also keep in mind that it is the duty of the court " to interpret, not to construct; to construe the will, not to make a new one." (*Simpson* v. *Trust Co. of America*, 129 App. Div. 200, 203; *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86; *Tilden* v. *Green*, 130 id. 29, 51; *Eidt* v. *Eidt*, 203 id. 325, 328.) It is the testator's property of which disposition is being made and it is the testator's right to say where it shall go.

This 3d paragraph reads: " I hereby give, devise and bequeath the remaining one-half part of my estate, both real and personal, of every name and nature, to Lillian M. Cook of Black River aforesaid, the wife of William Cook, and her heirs forever." The testator says, " I hereby give, devise and bequeath." He uses both the word " devise " and the word " bequeath." Each of these words has a well-defined meaning. The word " devise " in its legal sense refers to a gift of real property. The word " bequeath " in its legal sense refers to a gift of personal property. It may fairly be said that these two words have these respective meanings even to the lay mind. The testator uses neither word to the exclusion of the other. He uses both. In the same sentence, and in direct connection with these two words " devise " and " bequeath," he uses the words " the remaining one-half part of my estate, both real and personal, of every name and nature." He says: " I hereby give, devise and bequeath the remaining one-half part of my estate, both real and personal, of every name and nature." Can there be any doubt that the testator intended that his gift should include both real and personal property, if any he had? Can that language fairly be interpreted as intending to include only personal property? It seems to me that the language is conclusive and that the testator clearly intended to include in his gift whatever property he had at the time of his death, whether it was real or personal or both. It does not appear whether the testator was the owner of real property at the time of the execution of his will, but his clear intent at that time that his gift should include real as well as personal property appears from the

unequivocal language of the will and that clear intent is not changed by the fact that he died owning only personal property.

We are then not justified in approaching the interpretation or construction of the latter portion of this paragraph in the light of an intention on the part of the testator to dispose of personal property only. We must consider the language used in the light of an intention to dispose of both real and personal property. The language used in the latter part of this paragraph is, " to Lillian M. Cook of Black River aforesaid, the wife of William Cook, and her heirs forever." There is no difficulty or ambiguity until we come to the last four words. Lillian M. Cook having predeceased the testator, and not having been within the saving relations specified in section 29 of the Decedent Estate Law, the legacy and devise lapsed unless these last four words, " and her heirs forever," are words of substitution and not of limitation. If they are to be interpreted or construed as words of substitution, the gift was in the alternative and goes to the sole heir at law and next of kin of Lillian M. Cook. If they are to be interpreted or construed as words of limitation, the gift to Lillian M. Cook was absolute and unlimited, and, therefore, by reason of her death prior to that of the testator the legacy and devise lapsed, and the subject-matter thereof goes to the testator's next of kin.

After designating by name and identifying the person to whom he wished to give this remaining one-half of his net " estate, both real and personal, of every name and nature," the testator added the words " and her heirs forever." He used the word " and," not the word " or." He said " and her heirs forever," not " or her heirs forever." In the usual and commonly accepted meaning of these words " and " is a connective, while " or " is a disjunctive. Each has a fairly well-defined meaning and use. " And " is not correctly or generally used to express an alternative, unless followed by words which clearly indicate that intent. " Or " is correctly and generally used for that purpose. While they are not always to be accepted in accordance with their strict grammatical sense, and while " and " sometimes is taken to mean " or," and " or " sometimes is taken to mean " and," that can be done only when such change is justifiable; that is, when the testator's intent as gathered from the whole will clearly authorizes it, and not otherwise. It can be done only in aid of the testator's intent, never to change the testator's intent or to make for him a new will. It is urged on behalf of the next of kin of Lillian M. Cook that the word " and " as here used should be interpreted, or rather construed, to mean " or," and the word " heirs " to mean " next of kin." It does not seem to me that such construction is justified. The testator's

intent as gathered from the whole will does not clearly authorize it. The words " and " and " heirs " were used by an able and experienced lawyer to express the testator's intent. It must be presumed that he knew the difference between the words " and " and " or," and the words " heirs " and " next of kin," and that he was familiar with their respective meanings and uses, both ordinary and technical. It is a well-known rule of construction that the skill of the draftsman must be considered and where it appears that he was conversant with the technical language of well-drawn wills, and especially when the will was drawn by an experienced lawyer, the court will feel constrained to adhere strictly to its terms. (*Overheiser* v. *Lackey*, 207 N. Y. 229, 233; *Adams* v. *Massey*, 184 id. 62, 70.) It seems to me that it must be assumed that an experienced lawyer would have used the word " or " rather than the word " and " to express a gift intended to be in the alternative, and that having made use of the word " and " he would have added thereto words clearly indicating that it was intended to be used in the alternative sense if that was the testator's intention. There were no such words added here. The words added were " her heirs forever." The word " heirs " is naturally and presumptively a word of limitation. In *Matter of Tamargo* (220 N. Y. 225, at p. 229) COLLIN, J., says: " In the natural and ordinary meaning of words, a substitutional or alternative gift is expressed by the disjunctive ' or ' or by ' and ' justifiably, under its context, construed to mean ' or; ' in the absence of the disjunctive, the word ' heirs ' or the words ' heirs and assigns ' are words of limitation and not of purchase and the gift is absolute. (*Gittings* v. *M'Dermott*, 2 Myl. & K. 69; *Wright* v. *Trustees M. E. Church*, Hoffman's Ch. 202; *Keniston* v. *Adams*, 80 Me. 290; *Kimball* v. *Story*, 108 Mass. 382; *Gilmor's Estate*, 154 Penn. St. 523.)" In *Matter of Evans* (234 N. Y. 42), where the gift was of personal property only and was to the testator's sons " or their heirs respectively," CARDOZO, J. (at p. 46), says: " As applied to a gift of personal estate, the word ' heirs ' is not a term of art, as it is in a devise of real estate. Its office as a word of limitation, however natural or presumptive where the subject-matter of the gift is land, is by analogy only, and one that is wavering and dubious, when the subject-matter of the gift is money. In such a context, ' the force of the disjunctive word " or " is not easily to be got over ' * * *. A word which in its setting has no longer a strict or proper meaning as a word of limitation will take from slight circumstances the color and function of a word of purchase or substitution. The disjunctive has its normal value when what is counted on to qualify it is indeterminate or neutral." CARDOZO, J., here recognizes the word

" heirs " as naturally and presumptively a term of limitation when used in connection with a gift of real property. He also recognizes that, by analogy, it still retains something of its office as a word of limitation, even though the relation may be wavering and dubious, when used in connection with the disjunctive " or," and indicates that such an association is necessary to lift it out of its more or less indeterminate or neutral state and give to it the color and function of a word of purchase or substitution. Then it follows that, if " The disjunctive has its normal value when what is counted on to qualify it is indeterminate or neutral," the connective has its normal value under the same conditions. Again, if the connective has its normal value, and if a disjunctive meaning is not to be assigned to it, when used in connection with indeterminate or neutral words, it should have its normal meaning, and a disjunctive meaning should not be read into it, when used with words that are naturally and presumptively words of inheritance or limitation and not words indicating the alternative. As in the context of the Evans will, " the force of the disjunctive word ' or ' is not easily to be got over," so in the context of the testator's will here for interpretation or construction the force of the connective word " and " is not easily to be put aside. " And " is generally a connective. The word " heirs " is naturally and presumptively a term of inheritance and limitation when used in connection with a gift of real and personal property. It follows that the expression " and her heirs " is naturally and presumptively a term of inheritance or limitation, not a term of purchase or substitution. And this presumption is strengthened by the use of the word " forever " after the word " heirs." The testator used the words " and her heirs forever." There seems to be no justification for changing " and " to " or " and " heirs " to " next of kin." We must adhere to the terms of the will and to the language as used by the testator.

In early times a conveyance or devise of real property to a named grantee or devisee " and his heirs " gave to the named grantee or devisee only the life use, and to his heirs the remainder. Gradually that language in a grant or devise came to confer the absolute title on the named grantee or devisee, and nothing on his heirs. For a considerable period of time the adding of these words, or similar words, was deemed necessary to give to the grantee or devisee an estate in fee simple. Then later the addition of such words became unnecessary for that purpose. But this practice and this or similar phraseology were generally continued and still persist, and the words " and his heirs," " and his heirs forever," " and his heirs and assigns," " and his heirs, executors and administrators," and similar expressions are still commonly used in con-

veyancing and in wills when an estate in fee simple is intended to be conferred on the grantee or devisee. And when so used they are generally accepted as defining and describing the nature of the estate which is intended to be given to the grantee or devisee and not as giving to the heirs of the grantee or devisee any rights whatever in the premises conveyed or devised. These expressions are frequently used where real and personal property together are transferred.

The rule of presumption against intestacy or partial intestacy is invoked on behalf of the next of kin of Lillian M. Cook. But so far as appears, her next of kin was practically a stranger to the testator; she and the testator were not blood relatives. She was the wife of the son of the wife of the testator; that is she was the testator's deceased wife's daughter-in-law, and it is, the testator's deceased wife's daughter-in-law's daughter, that is, his deceased wife's granddaughter, who is invoking the rule. I doubt if the invocation of that rule by one so distantly related to a right to the testator's bounty should be given great weight when the effect of the application of the rule would be to disinherit the testator's sister. Of course the sister is not named in the will, and there may have been a just reason for that omission, but if there was such a reason it does not appear and we cannot speculate. The rule of presumption against intestacy or partial intestacy is here in conflict with another well-established and recognized rule of construction: " Where a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers." (*Wood* v. *Mitcham*, 92 N. Y. 375.) In *Matter of Werlich* (230 N. Y. 516, at p. 520) POUND, J., says: " The rule of presumption against intestacy and the rule in favor of one's blood against strangers often conflict and neither is a controlling guide to testator's intention. (*Raymond* v. *George Junior Republic Assn.*, 82 Misc. 507, 513, and cases cited.) Where the presumption against partial intestacy is in conflict with the presumption against disherison (*Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92, 100) the weaker must yield. As stated by HAIGHT, J., the rule to the effect that the testator did not intend to die intestate ' has many exceptions and is only occasionally followed.' (*Matter of Disney*, 190 N. Y. 128, 132.) But the rule that ' where a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers * * * can be overcome only by clear and unequivocal language.' (*Wood* v. *Mitcham*, 92 N. Y. 375, 379, 380.) " The rule which prefers the testator's sister seems to me to have greater weight than the rule the application of which would disinherit her in favor of his deceased

wife's grandchild, who was not his blood relative. There is here no clear and unequivocal language which tends to overcome the natural presumption in favor of the sister. The language used seems rather to support that presumption.

*Matter of Evans* (234 N. Y. 42), cited and relied upon by the next of kin of the deceased legatee and devisee, and the other cases cited in her behalf, are, I believe, clearly distinguished by their respective facts. Reference has already been made to the *Evans* case. There the gift was clearly intended to be of personal property only. The language used was " or their heirs respectively " and " or his lawful heirs." I do not believe that the decision in that case is in any way in conflict with the views here expressed. And that seems also to be true of the other cases cited.

I believe that the testator intended the words " and her heirs forever," used in said 3d paragraph, as words of inheritance or limitation and not as words of purchase or substitution; that the legacy and devise to Lillian M. Cook was absolute and not in the alternative; that it lapsed by reason of her death prior to that of the testator; that the testator died intestate as to the one-half of the residuary estate mentioned in the 3d paragraph of his will, and that the same goes to his sister, Emma J. Odell, as his only heir at law and next of kin. I so hold.

Submit decree accordingly.