OPINION OF THE COURT
Eugene M. Hanofee, S.
What the court has before it is, basically, an application by the surviving spouse to determine the scope of her elective share. William C. Reilly, deceased, died on January 25, 1986 at Orange County, New York. At the time of the decedent’s demise he was resident of the County of Sullivan. Decedent died testate by virtue of a will dated December 20, 1976, which has been admitted to probate. At the time of the decedent’s death, he left six children surviving and his wife, Patricia M. Reilly. It is noted that Mary Reilly is specifically mentioned as the deceased’s spouse in his will. Mary Reilly predeceased the testator, William C. Reilly, in that she died on July 10, 1983. Patricia M. Reilly filed a notice of election with this court on August 14, 1986.
The executrix filed an accounting with the court on July 24, 1987. The surviving spouse filed objections to that accounting, some of which deal with the scope of her elective share. With regard to the objections referred to in schedule C, particularly an administrative expense in the sum of $887.56, it is this court’s determination that they are adequately addressed in the executrix’s affidavit wherein she indicates that said sum was a debit against the assets of the estate while the estate did, in fact, receive insurance proceeds which are set forth in schedule A.
The court finds that the executrix’s commissions set forth in schedule C-l are appropriate in that they are the sums allowable by statute.
With regard to the objections as contained in schedule A dealing with the fact that there is no accounting for personal property, it is the court’s opinion that same are adequately explained in the affidavit of the executrix.
Accordingly, the objections referred to above have been determined in favor of the executrix.
The remaining objections deal with specifically the extent of the elected share that the surviving spouse is entitled to. At the time of the decedent’s death he owned in fee a parcel of property located in the State of Arizona and a parcel of property located in the State of Florida. The pertinent section in question is EPTL 5-1.1 (d) (8). That section read, as of the *782 time of the decedent’s death, as follows: "The decedent’s estate, against which a right of election granted by this section may be asserted, shall not include any real property of the decedent situated outside of this state”. The section in question was amended by Laws of 1986 (ch 246, § 1) to read as follows: "The decedent’s estate shall include all property of the decedent, wherever situated”. The effectuating legislation provided that the amended statute shall apply to the estates of persons living or born subsequent to the effective date of the statute and shall not impair or defeat any rights which have accrued under dispositions or appointments in effect prior to its effective date. The statute in question came into effect on or about September 29, 1986, some eight months after the decedent’s death.
For an interesting review of the history of EPTL 5-1.1 (d) (8), a review should be made of the case of Matter of Economides (126 Misc 2d 879).
Irrespective of the above-referred-to statute in effect at the time of the decedent’s death, the surviving spouse, on two theories, argues that the moneys recovered by the estate upon the sale of the Arizona and Florida properties should be added to the decedent’s estate when computing the amount of the right of election. The first theory is similar to the argument contained in Matter of Economides (supra), and that the surviving spouse argues that the pertinent statutes in the States of Florida and Arizona provide that should the decedent have been a domiciliary of those States, that real property that was located in those States and, apparently, any real property that may have been located in another State, would be added into the decedent’s estate for the purposes of determining the extent of the right of election. This court is of the opinion that, in interpreting what a widow’s right of election is, that it is bound by New York law. Accordingly, the court finds the surviving spouse’s arguments, which are predicated upon the pertinent statutes in the States of Florida and Arizona, unpersuasive in her attempts to include that property into the pool of property that is subject to the right of election.
The second argument proposed by the surviving spouse is directed to the effect that upon the sale of the real property, the proceeds received therefrom became personal property and, accordingly, should be added to decedent’s estate for determining the extent of the right of election.
*783 The executrix in this case petitioned the court to be appointed by petition dated April 10, 1986 and she was ultimately appointed by the court on May 5, 1986. The executrix, after she was appointed, apparently exercised her powers and sold the property located in the State of Florida, which closing took place on or about April 14, 1987. It is the court’s opinion that a literal reading of EPTL 5-1.1 (d) (8) supports the proposition that it was not the intent of the Legislature at that time to bring about the result argued by the surviving spouse. There is no question that the Florida real estate was not sold until well after the decedent’s death and it is this court’s opinion that, by the pertinent statutes in effect at the time of decedent’s death, it is not subject to the right of election.
With regard to the Arizona real property, the court finds that the facts differ significantly from the real property located in the State of Florida. The decedent contracted to sell the real estate located in the State of Arizona by contract signed by the decedent on December 13, 1985. A written contract in paragraph 35 specifically provides that the seller and buyer agree that they will comply with all terms and conditions of said contract and close escrow on or before January 15, 1986. The deed in question is dated January 1, 1986 and was signed by the decedent as seller on January 4, 1986. Apparently, under the laws of the State of Arizona, the buyers must accept and approve the deed by signing same, which they did on January 21, 1986. It is apparent from reading the papers that were delivered to the court, that the real estate transaction was, in fact, closed on January 21, 1986 in escrow. This fact is supported by documents received by the court, particularly, the joint tenancy deed and the United States Department of Housing and Urban Development settlement statement. The court notes, on the settlement statement, the taxes are adjusted as of January 21, 1986, the escrow closing date. It appears that the funds previously held in escrow were disbursed on January 30, 1986. It is the court’s opinion that the Cochise Title Agency, the escrowee, was the representative of the purchasers, in that Cochise was the title company apparently retained by the purchasers to examine title on their behalf and process the closing documents. Accordingly, it is the court’s opinion that the deed on January 21, 1986, was delivered to the purchasers and it was placed in the hands of the agent for the purchasers, albeit in escrow pending the receipt of funds from the funding company. It is, *784 accordingly, the court’s opinion that the closing took place on January 21, 1986 and, as a result, at the time of decedent’s death on January 25, 1986, he did not own the Arizona property but, in fact, owned personal property, to wit: the proceeds of the real estate transaction. Accordingly, it is the opinion of the court that the proceeds received by the estate as a result of the Arizona real estate transaction are personal property and subject to the surviving spouse widow’s election.
The court, accordingly, directs the executrix to amend the final accounting to reflect the above-set-forth decision of the court.