[624 NYS2d 134]

In the Matter of the Estate of EDWIN M. STANLEY, Deceased. SAUL B. SCHWARZ, as Coadministrator C. T. A. of the Estate of EDWIN M. STANLEY, Deceased, Appellant; BANK OF NEW YORK, as Coadministrator C. T. A. of the Estate of EDWIN M. STANLEY, Deceased, et al., Respondents.

First Department, March 21, 1995

### APPEARANCES OF COUNSEL

*Richard R. Blakeman* of counsel, New York City *(Blum, Gersen & Wood,* and *Saul Bernard Schwarz,* New York City, attorneys), for appellant.

*Kevin C. Fogarty,* guardian ad litem, Jamaica, for Jean Stanley, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

This will construction proceeding, on appeal from the Surrogate's Court, presents the issue, *inter alia,* of whether the corpus of the estate upon which the surviving spouse's elective share is to be determined includes the value of real property situated outside the State of New York when the applicable statute in effect at the time of the testator's death specifically excluded such property although the residuary estate, devised in trust, against which the elective share is to be calculated includes property "wheresoever situated".

The testator, Edward Martin Stanley, a resident of New York County, died on March 12, 1982, survived by his wife, Jean Stanley. His last will and testament, dated April 19, 1965, was admitted to probate and letters testamentary, subsequently revoked, issued. At present, Saul Bernard Schwarz, the petitioner herein, and The Bank of New York serve as coadministrators *c. t. a.* of the estate. At the time of his death the testator owned real property located in Germany. A German court has issued its "Erbschein", a form of certificate of inheritance, granting Jean Stanley a life interest in real property located in what was West Germany.

Article FOURTH (A) of the will provides, "If my wife, JEAN STANLEY, shall survive me, I direct that, from her elective share, my Trustee pay to her outright that amount required by law to be paid to her outright and the balance of her elective share to be held as a separate trust fund for the benefit of my said wife, and to manage, invest and reinvest the same, to collect the income therefrom and to pay over or

apply the entire net income to or for the benefit of my said wife, JEAN STANLEY, for and during the term of her life, at such times as my Trustee may deem proper, but at least quarter-annually." The balance of the residuary estate or, if the testator's spouse did not survive him, his entire residuary estate was to be distributed to his issue, or, if none, to his nieces and nephews, in separate trusts for each until he or she reaches the age of 25. Paragraph (D) of article FOURTH authorizes the trustee to invade the principal of the respective trusts, if necessary, for the wife's "proper care, support, and maintenance" and the "education of [the testator's] nieces or nephews."

EPTL 5-1.1 provides for the surviving spouse's right of election for all wills executed after August 31, 1930 and is therefore the statute which is applicable to this proceeding. At the time of the will's execution, out-of-State real property was included in the computation of the surviving spouse's elective share. (Decedent Estate Law § 18.) At the time of the testator's death in 1982, however, the decedent's estate against which a right of election was to be asserted did not include any of the decedent's real property situated outside of the State. (EPTL 5-1.1 [d] [8].) While EPTL 5-1.1 (d) (8) was subsequently amended, in 1986, to include as part of a decedent's estate all property wherever located, the Legislature, in enacting this amendment, specifically provided that "[t]his act shall apply to the estates, and to instruments making dispositions or appointments thereof, of persons living on its effective date or born subsequent thereto, without regard to the date of execution of any such instrument; except that this act shall not impair or defeat any rights which have accrued under dispositions or appointments in effect prior to its effective date." (L 1986, ch 246, § 2.) Thus, the 1986 amendment is not applicable to this estate.

The petitioner commenced the instant construction proceeding to obtain, *inter alia,* a determination as to whether the elective share trust set forth in article FOURTH (A) of the will includes real property located outside the State of New York. He argued, citing EPTL 5-1.1 (d) (8), that it did not. The surviving spouse argued that article FOURTH (A)'s provision allowing her to take from her elective share "outright that amount required by law to be paid to her outright" entitles her to take as in the case of intestacy, rather than under a right of election. She also argued that to exclude real property located outside the State of New York from the scope of her

right of election would contradict the residuary clause provision devising and bequeathing to the trustee, in trust, all property, "both real and personal * * * and wheresoever situated". Had the testator intended to circumscribe the trust for her benefit to her statutory right of election, she argues, he would have placed such limitation in article FOURTH and disposed of the real property located in Germany by bequeathing it to others.

The Surrogate framed the issue as to whether the testator, by providing a trust for the surviving spouse in the amount of her elective share, intended to limit the size of her trust "to the explicit terms of the elective share statute in effect at the time of his death in 1982". In concluding that the testator did not, the Surrogate cited the broad power conferred upon the trustee to invade the trust for the wife's benefit, a power which is not necessary to satisfy the statutory requirements of an elective share trust, the "relatively offhand" reference to the elective share bequest in trust for the surviving spouse as compared to the customary language used where a testator wishes to limit such bequest to the minimum amount required by law and the "well-settled constructional preference in favor of the surviving spouse". None of these cited factors justifies the result reached. Accordingly, we reverse and hold that the German property should be excluded in calculating the value of the surviving spouse's elective share.

As noted, under the clear and unambiguous terms of the applicable right of election statutory provision in effect at the time of the testator's death real property located outside of this State is excluded from the calculation of the corpus of an elective share trust. (EPTL 5-1.1 [d] [8].) "[T]he value of out-of-State real property does not enter into the computation of the elective share of the surviving spouse * * *. [The Surrogate's] court does not have any discretionary power to alter the clear direction of [the statutory] provision." (*Matter of Economides,* 126 Misc 2d 879, 881; *see, Matter of Reilly,* 137 Misc 2d 780, 782.)

Given this clear statutory directive, the issue before us is whether there is evidence of a testamentary intent to enlarge the residuary bequest to the surviving spouse beyond that which is provided under the relevant elective share statute and whether the conferral of a power of invasion with respect to the elective share trust is indicative of such an intent.

Article FOURTH (A) of the will contains the words "elective

share", a term of art, twice. In construing a will, the words used must be given their usual and accepted meaning; when technical terms are employed, they are presumed to have been used in that narrow sense, especially where the will is drafted by an experienced lawyer and particularly where, as here, a specific meaning is attributed to those words by statute. *(Matter of Orenstein,* 74 Misc 2d 288, 290; *see, Matter of Barrett,* 141 Misc 637, 638-639.) In such a case, there is no need for invocation of the policy of liberal construction in favor of the surviving spouse. *(See, Matter of Orenstein, supra; see also, Mullarky v Sullivan,* 136 NY 227.)

In his residuary clause disposition to the surviving spouse, the testator provided for the minimum required under the then elective share statute (Decedent Estate Law § 18), which included property outside the State. As noted, Decedent Estate Law § 18 was repealed and replaced by EPTL 5-1.1, which, in 1968, was amended (EPTL 5-1.1 [d] [7] [L 1968, ch 168], renum [8] [L 1969, ch 773, § 2]) to exclude real property outside the State, even for wills executed prior to the statute's enactment. Although subsequently amended again in 1986 to reinclude such property, no savings clause was enacted in the 1968 amendment with respect to the date of the will's execution; nor was there an exception in EPTL 5-1.1 (d) (8) based on a power of invasion as to an elective share trust. The wisdom of this enactment, written in clear, plain language and utilizing a statutory term—"right of election"—of well understood meaning, is not subject to judicial review, even under the guise of a construction favoring a surviving spouse. Had the testator died before 1968 or after 1986, the elective share trust would have included real property located outside the State. If the will excluded out-of-State real property in such a case, the surviving spouse could have exercised her right of election since the exclusion would have resulted in a trust corpus insufficient to meet the minimum statutory elective share requirement.

Thus, the issue is not and never was one of actual intent as to the inclusion of property in Germany in the elective share. The statute in effect in 1965 foreclosed any exercise of intent in that regard, rendering it irrelevant. The testator had no choice; Decedent Estate Law § 18 required out-of-State real property to be included in any elective share calculation. Thus, no legal significance can be attached to the residuary clause's inclusion of property "wheresoever situated". The only relevant frame of mind is the presumed intent to provide

the minimum as required by the right of election statute, whatever the operative statute might be at the time of death.

Nor does the provision in the residuary trust that the surviving spouse be paid "outright that amount required by law to be paid to her outright and the balance of her elective share to be held as a separate trust fund" entitle the surviving spouse to take as in intestacy, rather than under a right of election, as is argued. In so providing, the testator tracked the right of election statute. Thus, he provided for a limited outright distribution and bequeathed the balance in trust. Pursuant to EPTL 5-1.1 (a), applicable at the time of his death, the surviving spouse is entitled to an outright distribution of $2,500 from a share in trust equal to one half of the net estate. Such a testamentary disposition is clearly not akin to a bequest, as the surviving spouse argues, of "such a share * * * as the law allows or prescribes, or a provision of similar import," which has been construed as entitling the surviving spouse to take as in intestacy, rather than under a right of election. (See, e.g., Matter of Gahan, 276 App Div 647; see also, Matter of Scheubel, 43 Misc 2d 674.)

In determining that the testator intended to include out-of-State real property in the calculation of the value of the elective share, the Surrogate also cited the will's provision authorizing the trustee to invade principal for the surviving spouse's benefit. While a power of invasion may enlarge a legacy from mere income to the entire trust corpus, and, in a case such as this, to the equivalent of an outright elective share, this is not to say that the trust corpus itself is enlarged or intended to be enlarged by the power of invasion. The trust corpus cannot be larger than the elective share, a self-defining term and the least a testator may bequeath to a surviving spouse (EPTL 5-1.1). Likewise, the power of invasion can give no greater benefit than the elective share itself. Had the surviving spouse filed a notice of election and successfully challenged the trust, she would have been granted, in effect, a statutory power of invasion and obtained her elective share, which, as statutorily defined, could not be judicially enlarged to include out-of-State real property.

Nor is the power of invasion contradictory of the testator's testamentary plan to provide the bare minimum to the surviving spouse. While a provision granting an indiscriminate power of invasion which benefits others to the exclusion of the surviving spouse may invalidate an elective share trust (see, Matter of Aaronson, 20 AD2d 133, 136; Matter of Matthews,

255 App Div 80, *affd* 279 NY 732; *Matter of Wittner*, 301 NY 461), here, it should be noted, the power of invasion applies to separate and discrete trusts. Moreover, as regards the surviving spouse, the grant of that power is not contained within the paragraph setting forth the elective share trust but is included with the power of invasion with respect to the nieces and nephews, whose education was a primary concern of the testator. Apparently counselled by an experienced attorney, the testator provided for matching powers of invasion. By including a power of invasion for the surviving spouse with that relating to the nieces and nephews, the testator sought, no doubt, to avoid the potential destruction of the elective share trust because of a discriminatory absence of the power for the benefit of the spouse. The Surrogate's construction penalizes the testator's prudent approach to estate planning, which attempts to provide for and preserve the elective share trust and, at the same time, allow for the education of his nieces and nephews.

Finally, the right to invade for the surviving spouse's benefit was restrictive and was circumscribed by ascertainable standards. In applying those standards, the trustee had the power to consider the surviving spouse's independent means, a power hardly destructive of her right of election and certainly not indicative of an intent to expand the corpus of an elective share trust.

Accordingly, the decree of the Surrogate's Court, New York County (Renee R. Roth, S.), entered on or about December 22, 1993, which, in a will construction proceeding, determined that the decedent's real property located outside the State of New York be included in calculating the surviving spouse's elective share trust, should be reversed, on the law, without costs or disbursements, and the will construed to exclude such property in the elective share trust calculation.

MURPHY, P. J., ROSENBERGER and ASCH, JJ., concur.

Decree, Surrogate's Court, New York County, entered on or about December 22, 1993, reversed, on the law, without costs or disbursements, and the will construed to exclude such property in the elective share trust calculation.