OPINION OF THE COURT
Robert G. Main, S.
This matter was brought on, by petition and citation, by Thomas D. Houlihan, widower of the deceased, Sharon M. Hou *420 lihan. The testatrix died on June 12, 1994, a resident of the state of Minnesota. Testatrix’s will was admitted to original probate in Minnesota and was duly admitted to ancillary probate in this court on February 5, 2003. Petitioner seeks a construction of the will, more specifically paragraphs numbered 2.04 through 2.04.4, dealing with the disposition of real property located in this county. In support thereof, petitioner has filed an affidavit as well as a memorandum of law. In response, respondents, Andrew R. Mayer, Kathryn A. Mayer, Jeanine Mayer, and John W Mayer, nieces and nephews of the decedent, filed a memorandum of law in opposition to the relief sought by petitioner.
The court conferenced this matter with counsel on September 15, 2003, at which time the court afforded counsel two weeks to advise whether a hearing would be requested where additional proof would be presented. The two weeks passed with no response from petitioner. A letter, dated September 29, 2003, was received from respondents advising that they did not intend to present any evidence.
After the expiration of the two-week period, the court received correspondence from petitioner’s attorney together with an affidavit of petitioner and a copy of a deed for the property in question. The court was asked to utilize said documents in rendering its decision with regard to the will construction.
Shortly thereafter, the court received correspondence, dated October 3, 2003, from respondents’ attorney urging it to disregard the additional documents submitted by petitioner as both would be inadmissible at a hearing. The court agrees with counsel for respondents and will not take either the supplemental affidavit submitted by petitioner or the copy of the deed to the real property into account in rendering this decision.
The Position of the Parties
This proceeding requires the court to construe the following provision found in decedent’s will:
“2.04 Real Property in New York State I give and bequeath a life estate in my real property in the State of New York to my Spouse. I direct that upon the death of my Spouse, or upon my death if my Spouse predeceases me, the property shall be sold in the following manner:
“2.04.1 A first right of purchase at fair market value shall be given to David W. Mernan, Sr. Such right *421 shall lapse 150 days after he is provided written notice of his rights by my Personal Representative.
“2.04.2 A second right of purchase at fair market value shall be given jointly to my former stepchildren, Charlin Phillips, Linda Mont Marquet, Andrea Mernan and David Mernan, Jr., who survive me as they may agree. Such right shall lapse 120 days after each survivor has been provided written notice by my Personal Representative that David W Mernan Sr. has not exercised his first right of purchase.
“2.04.3 If these first and second rights of purchase are declined or lapse, the property shall be sold through Big Wolf Lake Association.
“2.04.4 The proceeds from the sale of this property shall be distributed to my spouse, if surviving. If not surviving, the proceeds shall be distributed in equal shares to John Mayer, Kathryn Mayer, Jeanine Mayer, and Andrew Mayer, or to their issue per stirpes.”
In his memorandum of law, petitioner argues that the above paragraphs provide him with a life estate in the property. In addition, he argues that paragraph 2.04.1 confers on him the additional right to sell the property and paragraph 2.04.4 confers on him the additional right to receive the proceeds therefrom. He believes that such a reading of the will does not invalidate any portion thereof. Petitioner argues that
“[t]he provision that T direct that upon the death of my Spouse . . . the property shall be sold . . .’is not contradicted by an interpretation that the property may be sold prior to Mr. Houlihan’s death. Paragraph 2.04 is not a commandment that the property must remain unsold during Mr. Houlihan’s life. Properly interpreted, this language simply describes what must happen if Mr. Houlihan chooses not to sell the property. It is only such an interpretation which allows the first portion of paragraph 2.04 to coexist with the first sentence of paragraph 2.04.4 without conflict.”
Respondents argue in their memorandum of law that the testatrix devised a life interest in her New York real property to her surviving spouse and the remainder interest, which vested upon their survival of the decedent, to the respondents. Respondents argue that petitioner’s interpretation of the paragraph is inconsistent and they ask:
*422 “Why would the testatrix go to the trouble of creating a life estate in her real property in her surviving spouse and set forth directions for the disposition of the property upon his death if her intention all along was to devise an interest in fee simple to him in the first place?”
In urging the court to construe paragraph 2.04 of the will as devising only a life estate in the real property to petitioner, respondents also seek a direction from the court that petitioner is then responsible for all upkeep, carrying charges and real property taxes on the subject property.
Applicable Law
This court has jurisdiction over this matter and must apply the laws of New York with regard to the real property situated in this state as provided in Estates, Powers and Trusts Law § 3-5.1 (b) (1), which provides that “[t]he formal validity, intrinsic validity, effect, interpretation, revocation or alteration of a testamentary disposition of real property, and the manner in which such property descends when not disposed of by will, are determined by the law of the jurisdiction in which the land is situated.”
What the petitioner seeks is a construction of certain language found in the testatrix’s will with regard to real property situated in this state. In addressing the construction of a will, it is the role of the court
“to determine the intent of the testator to clarify an ambiguous will provision. The intention of the testator must not be drawn from a single word or phrase, but from a sympathetic reading of the will as a whole, and in the light of all the facts and circumstances under which it was framed.” (11 Warren’s Heaton, Surrogates’ Courts § 187.05 [1] [a], at 187-189 [6th ed rev].)
The testatrix herself provides guidance to the court in paragraph 3.07 of her will, which provides, in part:
“The total or partial invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other provision. If any provision hereof is found partially or wholly invalid or unenforceable, such provision shall be construed and rewritten to reflect my intent as expressed herein to the fullest extent permitted by law.”
*423 Discussion
After reviewing the testatrix’s will at length, the memoranda of law, and various canons of construction, the court finds that respondents’ reading and interpretation of paragraphs 2.04 through 2.04.4 is the interpretation that best portrays the intent of the testatrix.
In reviewing the paragraphs in question, this court cannot help but focus upon the very precise and technical language found in the very first sentence at issue. “I give and bequeath a life estate in my real property in the State of New York to my Spouse.” (Emphasis added.)
“In construing a will, the words used must be given their usual and accepted meaning; when technical terms are employed, they are presumed to have been used in that narrow sense, especially where the will is drafted by an experienced lawyer” (Matter of Stanley, 209 AD2d 70, 74 [1995]).
In Matter of Everett (200 Misc 637 [1951]), the surrogate was faced with a will construction where the testator gave his widow a legal life estate, and the court was presented with the question of whether the testator also intended for his widow to invade or dispose of the principal during her lifetime. The court held, “Had the testator intended that his widow have the right to invade the principal, the will, considering it was drawn by a lawyer, should have said so in plain terms and not left it to conjecture.” (Everett at 639.)
It appears, and it has not been argued otherwise, that the testatrix’s will in the instant matter was prepared by an attorney at law and was not drafted by a layman. In drafting the will, the testatrix’s attorney used the very specific term “life estate.” A life estate is a technical term with specific meaning under the law. Black’s Law Dictionary, 7th edition (at 568), defines a life estate as “[a]n estate held only for the duration of a specified person’s life, usu. the possessor’s.”
The second sentence of paragraph 2.04 follows smoothly from the first and continues the language with regard to a life estate. “I direct that upon the death of my Spouse, or upon my death if my Spouse predeceases me, the property shall be sold in the following manner.” Reading this second sentence solidifies the above argument with regard to the technical term “life estate.” After the testatrix specifically devises a life estate in the property to her spouse, she continues the paragraph with a direction that the property is to be sold only upon the death of her spouse *424 or upon her death if her spouse predeceased her. It is after this direction is laid out that the four following paragraphs, 2.04.1 through 2.04.4, describe how the property is to be sold.
It is in this description of how the real property is to be sold upon petitioner’s death that the language of the will becomes ambiguous and problematic. Paragraph 2.04.1 provides who has the first right of purchase and states that written notice of this right is to be provided by the testatrix’s personal representative. Petitioner argues that this language confers upon him the power to sell the property because he is named in the will as the testatrix’s personal representative. However, the testatrix also appoints, at paragraph 1.04.2, as successor or second appointee, Andrew R. Mayer, one of the respondents herein.
Petitioner’s argument that paragraph 2.04.1 grants him, the holder of a life estate, the power to sell the real property fails. This paragraph merely provides that it is the job of the personal representative to send out the first right of purchase notification when the property is sold upon the death of the testatrix’s spouse. In that instance, as the will provides, the personal representative is Andrew R. Mayer. For the will to grant the holder of a life estate in real property the power to sell or transfer property, more precise language would have to be utilized.
After providing whom shall have first and second rights of purchase, the testatrix provides direction with regard to the proceeds of the sale in paragraph 2.04.4 as follows: “The proceeds from the sale of this property shall be distributed to my spouse, if surviving. If not surviving, the proceeds shall be distributed in equal shares to John Mayer, Kathryn Mayer, Jeanine Mayer, and Andrew Mayer, or to their issue per stirpes.”
The petitioner construes this paragraph as giving him the right to receive the proceeds from the sale of the property. The respondents argue that the language in the first sentence of this paragraph is ambiguous and should be stricken.
In Matter of Everett (200 Misc 637, 639), the court held that “[wjhere the will in unambiguous language gives a specific estate, it will not be amplified or lessened by subsequent provisions unless it is apparent it was the intention of the testator so to enlarge or lessen it.”
The court agrees with respondents and the first sentence and the first three words of the second sentence of paragraph 2.04.4 will be stricken from the will. Only in so doing is it possible to give full and proper expression and applicability to the precise *425 language found throughout paragraphs 2.04, 2.04.1, 2.04.2, and 2.04.3.
“[T]he courts will construe the language of the will in such manner as to give effect to the testator’s intent, regardless of inaccuracies in the testator’s language or presentation of ideas. As a result, it is occasionally necessary for a court to transpose, add, delete or substitute words used by the testator, or disregard rules of grammar and punctuation.” (11 Warren’s Heaton, Surrogates’ Courts § 187.02 [6], at 187-185 [6th ed rev].)
In reaching this conclusion, the court is not unmindful of, and has not disregarded, the general preference favoring provisions appearing later in a will. Usually employed as a last resort, when all other attempts at harmonizing the provisions of a will have failed, this rule of construction is not thought applicable here. This court believes that the overall import of the will is sufficiently strong to justify its conclusions. Further, the cases decided pursuant to this rule of construction seem to deal with more specific contradictions than the ambiguity here raises (see, 11 Warren’s Heaton, Surrogates’ Courts § 187.03 [3] [b], at 187-131 [6th ed rev]).
As this court concludes that petitioner is given a life estate in the property, it must now turn to the respondents and what, if anything, the paragraph at issue leaves to them. Striking the first sentence and the first three words from the second sentence of paragraph 2.04.4 leaves, “[T]he proceeds shall be distributed in equal shares to John Mayer, Kathryn Mayer, Jeanine Mayer, and Andrew Mayer, or to their issue per stirpes.” In determining exactly what type of interest this subparagraph gives to the respondents, Warren’s Heaton again provides guidance:
“[W]here a remainder is granted following a life estate and is specifically made contingent upon survivorship, the general rule is that the vesting does not occur until death of the life beneficiary. However, this general rule is not applicable to a case where a testator has provided a bequest to a named person and further provides that if he predeceases the life beneficiary, the remainder should go to his issue. Rather, such a bequest creates a vested remainder subject to divestment only by his death with issue surviving prior to the death of the live tenant.” (11 Warren’s Heaton, Surrogates’ Courts § 187.04 [5], at 187-166 [6th ed rev].)
*426 A review of the will in its entirety confirms for this court that the testator intended to give the petitioner a life estate in the real property located in this state without the right to sell or to enjoy the proceeds therefrom, and intended to give the respondents a vested remainder subject to divestment. It is evident that the testatrix desired to leave much of her estate to her spouse. It is also evident, however, that she wished to leave the respondents with several significant bequests.
With regard to her personal property, the testatrix bequeathed two rings and family silver to her stepdaughter and former stepchildren with the remainder of all of her jewelry bequeathed to two of the respondents, Kathryn Mayer and Jeanine Mayer. All of her remaining personal property was left to the petitioner if he survived her and, if he did not, then to the respondents herein. The testatrix also left, if in existence at the time of her death, all GMAC demand note funds and a certificate of deposit worth $15,000 to the respondents. As to her residuary estate, the testatrix bequeathed her remaining assets to petitioner, if surviving, and if not, then to the respondents herein.
In reading the will in its entirety, it is not difficult for this court to conclude that the testatrix intended to leave petitioner a simple life estate in the real property situated in the State of New York. While she certainly made other provisions for him throughout her will, she also made it clear that she wished to leave valuables to the respondents as well.
As the petitioner is found to have a life estate in the property located in the State of New York, without the power to sell or receive the proceeds therefrom, and in the absence of a provision in the will providing otherwise, respondents’ request for a direction that petitioner provide for all upkeep, carrying charges and real property taxes on the real property will be granted (see, Commercial Natl. Bank & Trust Co. of N.Y. v Erwin, 277 App Div 378 [1950]; 8-1 Warren’s Weed, New York Real Property, Life Estates § 2.06 [4th ed]).
For the reasons set forth herein, it is adjudged and decreed that the will is construed so as to provide the petitioner a life estate in and to the devised real property as if the language “The proceeds from the sale of this property shall be distributed to my spouse, if surviving. If not surviving,” at paragraph 2.04.4, were deleted; and it is further adjudged and decreed that petitioner shall be responsible for ordinary upkeep, carrying charges, and real property taxes on the devised real property.